STEWART OCCHIPINTI, LLP
Charles A. Stewart, III (CS-7099)
65 West 36th Street, 7th Floor
New York, New York 10018
Telephone: (212) 239-5500
Facsimile: (212) 239-7030
cstewart@somlaw.com

*Attorney for Defendant Mark Abeshouse*

LAW OFFICE OF RICHARD E. SIGNORELLI
Richard E. Signorelli RS-7976)
799 Broadway, Suite 539
New York, New York 10003
Telephone: (212) 254-4218
Facsimile: (212) 254-1396
rsignorelli@nyclitigator.com

**07 CV 10491**

*Attorney for Defendant Rhonda Leonard*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
ANDREW C. SANKIN,           )
                            )
            Plaintiff,      )
                            )
                            )     Westchester County Index No.
    -against-               )     20980-07
                            )
MARK ABESHOUSE and RHONDA   )     **NOTICE OF REMOVAL**
LEONARD,                    )
                            )
            Defendants.     )
                            )
------------------------------------------------------X

**PLEASE TAKE NOTICE** that, upon this Notice of Removal and the exhibit attached hereto, defendants Mark Abeshouse and Rhonda Leonard, pursuant to 28 U.S.C. § 1441 *et seq.*, hereby remove the above captioned action, originally filed in the Supreme Court of the State of New York, County of Westchester, to the United States District Court

1

for the Southern District of New York, and aver that the action be designated for assignment to the White Plains Courthouse based on each of the defendants' residence in the County of Westchester, pursuant to Rule 21 of the Local Rules for Division of Business Among District Judges.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to such removal under 28 U.S.C. § 1441 *et seq.*, plaintiff Andrew C. Sankin ("Sankin") shall proceed no further in the action commenced by him in the Supreme Court of the State of New York, County of Westchester, and shall govern himself accordingly.

As for their short and plain statement of the grounds for the removal of this civil action, defendants Abeshouse and Leonard allege as follows:

1. There is now pending in the Supreme Court of the State of New York, County of Westchester, an action styled *Andrew C. Sankin v. Mark Abeshouse and Rhonda Leonard,* Index No. 20980-07. Plaintiff Sankin commenced this action by purchasing the index number and filing the complaint on or about October 16, 2007. The summons and complaint were thereafter served upon each of the defendants by so-called "nail and mail" service, pursuant to Section 308(4) of the New York Civil Practice Law and Rules, on or about October 22, 2007.[1]

2. The time within which either defendant Abeshouse or defendant Leonard is required to file responsive papers to plaintiff Sankin's complaint, and the thirty (30) day

---

[1] The Affidavits of Service filed by plaintiff in the state court action on November 2, 2007 are inaccurate. According to the Affidavits of Service filed by David A. Bacharach, plaintiff's process server, Rhonda Leonard was personally served with a copy of the complaint on October 22, 2007, and also accepted service of the complaint on behalf of Mark Abeshouse. Ms. Leonard, however, was neither personally served with the complaint nor accepted a copy of the complaint for Mr. Abeshouse. Instead, the process server left two copies of the complaint on Mr. Abeshouse's and Ms. Leonard's front doorstep on the morning of October 22, 2007, and two additional copies of the complaint were received in the mail at their residence a few days later: one addressed to Ms. Leonard, the second to Mr. Abeshouse. Accordingly, under the New York Civil Practice Law and Rules, Ms. Leonard and Mr. Abeshouse had thirty-five (35) days from October 22, 2007, or until November 26, 2007, to file an answer or respond to plaintiff's complaint.

period within which to file for and obtain removal of said action, pursuant to 28 U.S.C. § 1446, have not yet expired.

3. In his complaint, plaintiff Sankin alleges that the basis of venue is defendants' address in the County of Westchester, State of New York. A copy of plaintiff Sankin's complaint is attached hereto as Exhibit A.

4. Defendants Mark Abeshouse and Rhonda Leonard are each residents of the County of Westchester, State of New York. Defendant Leonard is the wife of defendant Abeshouse.

5. The complaint alleges that plaintiff Sankin is a resident of the State of Florida.

6. The complaint seeks compensatory damages in the amount of $500,000.00, plus prejudgment interest and punitive damages.

7. Pursuant to 28 U.S.C. § 1332, this District Court has original jurisdiction over this action because it is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

8. For the foregoing reasons, pursuant to 28 U.S.C. § 1441, *et seq.*, this action is removable by defendants Abeshouse and Leonard.

9. Upon the filing of this Notice, defendants Abeshouse and Leonard have given notice to plaintiff Sankin of said Notice of Removal. In addition, defendants Abeshouse and Leonard have filed a true and correct copy of said Notice of Removal with the Clerk of Supreme Court of the State of New York, County of Westchester, together with the exhibit annexed thereto, in compliance with 28 U.S.C. § 1446.

**WHEREFORE**, defendants Abeshouse and Leonard respectfully request that this Notice of Removal and the exhibit annexed hereto be received and filed; that the action commenced in the Supreme Court of the State of New York, County of Westchester, proceed no further; that all necessary writs be issued to bring before this Court all prior records and proceedings in the action commenced in the Supreme Court of the State of New York, County of Westchester; and that this Court grant such other and further relief as defendants Abeshouse and Leonard are entitled to receive.

Dated: New York, New York
November 20, 2007

**STEWART OCCHIPINTI, LLP**

By: _____
Charles A. Stewart, III (CS-7099)
65 West 36th Street, 7th Floor
New York, New York 10018
Telephone: (212) 239-5500
Facsimile: (212) 239-7030
cstewart@somlaw.com

*Attorney for Defendant Mark Abeshouse*

**LAW OFFICES OF RICHARD E. SIGNORELLI**

By: _____
Richard E. Signorelli (RS-7976)
799 Broadway, Suite 539
New York, New York 10003
Telephone: (212) 254-4218
Facsimile: (212) 254-1396
rsignorelli@nyclitigator.com

TO:   **DICKSTEIN SHAPIRO LLP**
1177 Avenue of the Americas
New York, New York 10036-2714

EXHIBIT A

B199— Summons without notice, Supreme Court, personal or substituted service. 12 pt. type, 4-pt.

# Supreme Court of the State of New York
## County of WESTCHESTER



ANDREW C. SANKIN

Plaintiff(s)

against

MARK ABESHOUSE
AND
RHONDA LEONARD

Defendant(s)

Index No. 20980-07
Date purchased 10-12-07

Plaintiff(s) designate(s)

_____ County as the place of trial.

The basis of the venue is

Amended
Summons

DEFENDANTS
~~Plaintiff(s)~~ reside(s) at
110 Pondview Lane
New Rochelle, NY   10804
County of
Westchester

To the above named Defendant(s)

**You are hereby summoned to answer** the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer judgment will be taken against you by default for the relief demanded in the complaint.

Dated,  October 10, 2007
        New York, NY

Attorney(s) for Plaintiff

Office and Post Office Address

Defendant's address:
    MARK ABESHOUSE
    110 Pondview Lane
    New Rochelle, NY   10804

    RHONDA LEONARD
    110 Pondview Lane
    New Rochelle, NY   10804

DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY   10036

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---------------------------------------X
ANDREW C. SANKIN,

        Plaintiff,

v.

MARK ABESHOUSE AND
RHONDA LEONARD,

        Defendants.
---------------------------------------X

Index No.: 20980-07
Date Purchased: 10-12-07

COMPLAINT

RECEIVED

JURY TRIAL DEMANDED OCT 12 2007

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

    Plaintiff Andrew C. Sankin, by his attorneys, Dickstein Shapiro LLP, as and for his complaint against the above-named Defendants, states as follows:

### NATURE OF ACTION

    1. This is an action for damages stemming from the Defendants' malicious prosecution of an arbitration against Plaintiff Andrew C. Sankin ("Sankin").

    2. Augustus Capital LLC ("Augustus") through its sole principal, Defendant Mark Abeshouse ("Abeshouse") and its attorney, Defendant Rhonda Leonard ("Leonard"), maliciously instituted a National Association of Securities Dealers ("NASD") (now the Financial Industry Regulatory Authority ("FINRA")) arbitration (the "NASD Arbitration") against Sankin, claiming that Sankin owed Augustus various fees and commissions stemming from Sankin's affiliation with Augustus as a registered representative.

    3. Defendants were or should have been aware that the claims made against Sankin in the NASD Arbitration lacked probable cause. Instead, the NASD Arbitration was part of a continuing scheme by Defendants to unilaterally and retroactively impose onerous new terms on a commission-sharing agreement (the "Agreement") between Sankin and Augustus under which

Sankin shared with Augustus a certain fixed amount of the commissions he received for selling interests in the biotechnology hedge funds Perceptive Life Sciences Fund, L.P., Perceptive Life Sciences Qualified Fund, L.P., and Perceptive Life Sciences Offshore Fund LTD (collectively, "Perceptive").

4. Abeshouse and Leonard bore a grudge against Sankin because of his tremendous financial success in the hedge fund world and their ensuing unhappiness with the Agreement, which Sankin refused to renegotiate. As evidence of the spite exhibited by Abeshouse and Leonard toward Sankin were the defamatory statements made on Sankin's Form U5 falsely suggesting that Sankin was terminated from Augustus as a result of "compliance" issues.

5. The arbitration panel denied all of Augustus's claims and found that the statements made on Sankin's Form U5 were defamatory. The panel recommended expungement of the Reason for Termination section of Sankin's Form U5 filed by Augustus and the change of the Reason for Termination to "voluntary."

6. In addition to the great physical, psychological, and financial toll of defending himself in the NASD Arbitration, the NASD Arbitration adversely affected Sankin's recovery from cancer treatment that he was undergoing at the time the NASD Arbitration was instituted. The NASD Arbitration also damaged Sankin's relationship with Joseph Edelman ("Edelman"), Managing Member of Perceptive Advisors, LLC ("Perceptive Advisors") and was a contributing factor in Sankin's removal by Edelman as an officer of Perceptive Advisors in December 2006.

## JURISDICTION AND VENUE

7. The Court has venue pursuant to N.Y. CPLR § 503(a) because Defendants reside in Westchester County.

2

## PARTIES

8. The Plaintiff is a resident of the State of Florida and resides at 6955 Queenferry Circle, Boca Raton, FL 33496.

9. Upon information and belief, Defendant Abeshouse is a resident of the State of New York, County of Westchester, and resides at 110 Pondview Lane, New Rochelle, NY 10804. Abeshouse is the sole principle and Managing Member of Augustus.

10. Upon information and belief, Defendant Leonard is Abeshouse's wife and Augustus's General Counsel, is a resident of the State of New York, County of Westchester, and resides at 110 Pondview Lane, New Rochelle, NY 10804.

## NON-PARTY

11. Augustus is a FINRA-member broker-dealer firm with its principal place of business in Westchester County, New York State at 550 Mamaroneck Avenue, Suite 508, Harrison, NY 10528.

## FACTS

12. Sankin became a registered representative of Augustus in February 1999.

13. Sankin entered into a Selling Agreement with Perceptive on March 16, 2000 under which Sankin agreed to sell interests in Perceptive. For most of the duration of the Agreement, Sankin was compensated with a certain number of "basis points" of the funds invested in Perceptive that were attributable to his marketing efforts.

14. In exchange for allowing Sankin to "park" his broker-dealer license and for providing Sankin with a list of prospective investors, Augustus shared a certain fixed amount of the commission that Sankin received from Perceptive attributable to each specific investor that the parties agreed had a connection to Augustus. Under the Agreement, the commission shared

3

constituted the entirety of the compensation covered under the Agreement. Furthermore, the Agreement provided that Augustus would share in commissions paid to Sankin only for the period during which Sankin was registered with Augustus.

15. In most cases, Sankin and Abeshouse negotiated the number of "basis points" that Augustus was to receive for each investor or group of investors. As Sankin's commission was reduced by Perceptive, Sankin and Augustus in turn negotiated reduced commission rates due to Augustus for future investments.

16. Over the five and one-half years during which Sankin was a registered representative of Augustus, First New York Securities, LLC ("First New York"), which executed a substantial portion of Perceptive's securities trades, sent Abeshouse a monthly statement of commissions earned by Sankin from Perceptive along with a check for the total amount of the commissions. After Augustus deducted its share of the commissions under the Agreement, Abeshouse sent the remainder of the commissions to Sankin. Sankin also sent Abeshouse a monthly statement detailing the commissions he earned from Perceptive as well as a detailed accounting of Augustus's share of the commissions.

17. Over the course of the entire Agreement, the amount of the commissions retained by Augustus totaled approximately $336,473. During that period of time, Sankin's earnings from Perceptive dramatically increased.

18. Abeshouse did not object to the commission statements for 46 consecutive months. In a series of e-mails beginning in or around early 2004, Abeshouse began expressing his displeasure with the Agreement and indicated to Sankin that he sought to renegotiate it. In these e-mails, Abeshouse acknowledged that he and Sankin had an agreement, but said that he wanted to alter it because the amount he was receiving under the Agreement had become insulting to

4

him now that Sankin was experiencing great success in the hedge fund world. Abeshouse took this position notwithstanding his expressed view that he knew that he and Sankin "had a deal" which he was "reluctant to go back on."

19. After repeated pleas by Abeshouse to renegotiate the Agreement, Sankin agreed to pay Augustus a fixed additional amount of $1,000 per month to compensate Augustus for claimed additional overhead expenses, although Augustus never provided any documentation or specifics for such expenses. Aside from this additional amount, Sankin never agreed to pay any other additional compensation to Augustus under the Agreement.

20. Despite Sankin's goodwill gesture in offering additional compensation, Abeshouse remained unhappy with the Agreement. Abeshouse expressed this continuing resentment through e-mails in which he expressed displeasure that Sankin was making significantly more money than Abeshouse had expected.

21. In June 2004, Leonard wrote a purportedly independent opinion letter ("Opinion Letter") in which she acknowledged the existing agreement between Sankin and Abeshouse and advised Abeshouse to charge Sankin "additional fees" if Sankin did not agree to a new compensation agreement. In the letter, Leonard also advised Abeshouse that he should note on Sankin's Form U5 that he had compliance issues if Sankin did not agree to a new compensation structure.

22. On June 24, 2004, Augustus distributed a memorandum setting forth a new compensation schedule effective July 1, 2004 for registered representatives of Augustus.

23. Sankin refused to accept the new compensation schedule and resigned from Augustus on July 8, 2004.

24. Upon Sankin's resignation from Augustus, he became a member of Perceptive Advisors and ceased being paid under the Selling Agreement.

25. After Sankin resigned from Augustus, Aboshouse sent him several e-mails in which he made veiled threats with regard to Sankin's Form U5 unless Sankin reconsidered his resignation and accepted the new compensation structure.

26. When Sankin refused to reconsider his resignation, Abeshouse indicated on Sankin's Form U5 that Sankin was "permitted to resign" and wrote in the comments section that "[a] dispute arose regarding Augustus Capital LLC's compliance policies resulting in the resignation of employee Sankin."

27. The statements on Sankin's Form U5 were completely and utterly false, and were included on Sankin's Form U5 in a blatant attempt to harm Sankin's future employment opportunities.

28. Following Sankin's resignation from Augustus, Abeshouse requested that Sankin continue to remit commissions to Augustus despite the fact that the Agreement provided for commission payments only as long as Sankin was a registered representative of Augustus. Sankin refused to continue paying commissions to Augustus after his resignation.

29. In 2005, Sankin was diagnosed with renal cell carcinoma and required immediate surgery to have his cancerous kidney removed. Defendants were aware of Sankin's condition.

30. One day before Sankin checked into the hospital to have his cancerous kidney removed, Defendants served Sankin with the Statement of Claim in the NASD Arbitration. Upon information and belief, Defendants knew that Sankin was scheduled for surgery on or around the day following service of the Statement of Claim.

6

31. Abeshouse and Leonard were extremely reluctant to agree to extensions of due dates in the NASD Arbitration to accommodate Sankin's post-operative recovery despite Sankin remaining in the hospital for an extended period of time after he suffered a life-threatening infection.

32. The NASD Arbitration took place between April 9-11, 2007 and June 12-14, 2007.

33. During the NASD Arbitration, Abeshouse and Leonard intentionally misrepresented, among other things, the nature of the Agreement with Sankin and falsely claimed that Sankin owed various fees and commissions, including a "Placement Fee," a "Marketing Fee," and a "Broker-Dealer Fee," which Defendants knew were not part of the Agreement.

34. During the NASD Arbitration in April 2007, in an off-record comment to Adam Weiss, one of Sankin's attorneys, Abeshouse stated, "I don't care if I win or lose, I just like to fight."

## FIRST CAUSE OF ACTION
### (Malicious Prosecution)

35. Sankin repeats and realleges the allegations set forth in paragraphs 1 through 34, as fully set forth herein.

36. On or about May 10, 2005, Augustus through Abeshouse and Leonard instituted the NASD Arbitration against Sankin, claiming that Sankin owed Augustus various fees and commissions, including a "Placement Fee," a "Marketing Fee," and a "Broker-Dealer Fee." Augustus also claimed that Sankin was obligated to continue paying commissions even after his resignation.

37. Defendants knew or should have known that their claims in the NASD Arbitration lacked any basis in fact. Previous to filing the action, Abeshouse, in various e-mails written to Sankin, contradicted the claims in the NASD Arbitration and acknowledged the true agreement

7

between himself and Sankin. In her Opinion Letter, Leonard also contradicted the claims in the NASD Arbitration and acknowledged the agreement between Abeshouse and Sankin.

38. The NASD Arbitration terminated in favor of Sankin on all counts. The arbitration panel also found that the statements made by Abeshouse on Sankin's Form U5 were defamatory. The panel recommended expungement of the Reason for Termination section of Sankin's Form U5 filed by Augustus and the change of the Reason for Termination to "voluntary."

39. Abeshouse and Leonard exhibited malice toward Sankin, as evidenced by their defamatory statements on Sankin's Form U5, their service of the Statement of Claim one day before Sankin's cancer surgery, and the correspondence between Abeshouse and Sankin in which Abeshouse expresses his displeasure with the Agreement. Abeshouse's malice toward Sankin is also demonstrated by his statement, "I don't care if I win or lose, I just like to fight."

40. As a direct, proximate result of Defendants' malicious prosecution, Sankin was forced to incur substantial costs, fees, and disbursements in defending against Defendants' vindictive pursuit of a frivolous arbitration. Also as a direct, proximate result of Defendants' malicious prosecution, Sankin's recovery from cancer was adversely affected. Furthermore, Defendants' malicious prosecution damaged Sankin's relationship with Edelman and was a contributing factor in Sankin's removal as an officer of Perceptive Advisors. As a direct and proximate result of Defendants' malicious prosecution, Sankin has suffered damages in an amount to be determined at trial but not less than $500,000.

WHEREFORE, Plaintiff respectfully demands judgment as follows:

A.  Against Defendant and in favor of Plaintiff for compensatory damages in the amount of $500,000 plus prejudgment interest pursuant to CPLR § 5001;

10/16/2007 15:01    646-562-0669    DICKSTEIN, SHAPIRO, MO    PAGE 09

Oct 22 07 11:31a    Joan    999-999-9999    p.10

B.  Awarding to Plaintiff punitive/exemplary damages in the amount to be determined at trial;

C.  Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees; and

D.  Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
October 11, 2007

Respectfully submitted,

DICKSTEIN SHAPIRO LLP

By: *signature*
Ira Lee Sorkin
1177 Avenue of the Americas
New York, New York 10036-2714
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

DOCSNY-266812v04

9

# CERTFICATE OF SERVICE

CHARLES A. STEWART, III, certifies, under penalty of perjury, as follows:

I am a member of Stewart Occhipinti, LLP, attorneys for Mark Abeshouse, one of the defendants in above captioned action. I am not a party to this proceeding and am over 18 years of age. On November 20, 2007, the annexed Notice of Removal was served upon the attorneys for Andrew C. Sankin, the plaintiff in this proceeding, by depositing a true copy thereof enclosed in properly addressed postpaid wrappers in an official depository of the United States Postal Service within the State of New York, to:

>Ira Lee Sorkin, Esq.
>Dickstein Shapiro LLP
>1177 Avenue of the Americas
>New York, New York 10036

Dated: New York, New York
November 20, 2007

_____
CHARLES A. STEWART, III