STEWART OCCHIPINTI, LLP
Charles A. Stewart, III (CS-7099)
65 West 36th Street, 7th Floor
New York, New York 10018
Telephone: (212) 239-5500
Facsimile: (212) 239-7030
cstewart@somlaw.com

*Attorney for Defendant Mark Abeshouse*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

ANDREW C. SANKIN,                              )
                                               )
                        Plaintiff,             )        7:07-cv-10491-CLB
                                               )
                                               )
        -against-                              )
                                               )
MARK ABESHOUSE and RHONDA                      )
LEONARD,                                       )
                                               )
                        Defendants.            )
                                               )
-------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABESHOUSE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................. 1

FACTUAL BACKGROUND .............................................................. 3

    The NASD Proceeding ........................................................... 3

    The Instant Action ................................................................ 5

ARGUMENT ................................................................................ 6

I.    ALL CLAIMS AGAINST MARK ABESHOUSE MUST
       BE DISMISSED ................................................................ 6

    A.  Standards for Motion to Dismiss ..................................... 6

    B.  Sankin is Collaterally Estopped From Alleging That Abeshouse
        Lacked Probable Cause to Commence the NASD Proceeding ... 7

    C.  Sankin Has Failed to Properly Allege Special Damages ............ 9

    D.  Abeshouse Was Not a Party in the Action Below ................... 13

    E.  The NASD Proceeding Does Not Provide a Basis
        For a Malicious Prosecution Action ................................. 14

CONCLUSION ............................................................................. 16

## TABLE OF AUTHORITIES

Page

Federal Cases

*Bell Atl. v. Twombly,* ___ U.S. ___, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ....... 6, 13

*Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42 (2d Cir. 1991) ............... 6

*First Merch. Bank OSH, Ltd. v. Vill. Roadshow Pictures (U.S.A.) Inc.,*
2002 U.S. Dist. LEXIS 11769 (S.D.N.Y. June 28, 2002) ......................... 11

*Hakakha v. Peregrine Fin. & Sec. Inc.,* 177 Fed. Appx. 587 (9th Cir. 2006) .... 14

*Interchem Asia 2000 PTE Ltd. v. Ocean Petrochemicals AG,*
373 F. Supp. 2d 340 (S.D.N.Y. 2005) ................................... 4

*In re Eerie World Entertainment, L.L.C.,* 2006 Bankr. LEXIS 770
(Bankr. S.D.N.Y. Apr. 28, 2006) ....................................... 10

*Iqbal v. Hasty,* 490 F.3d 143 (2d Cir. 2007) ............................. 6, 13

*Kalso Systemet, Inc. v. Jacobs,* 474 F. Supp. 666 (S.D.N.Y. 1979) ............... 10

*Kaslof v. Global Health Alternatives, Inc.,* 2000 U.S. Dist. LEXIS 21053
(E.D.N.Y. June 29, 2000), adopted, 2001 U.S. Dist. LEXIS 2612
(E.D.NY. Feb. 13, 2002)............................................. 11

*Levitin v. Miller,* 1994 U.S. Dist. LEXIS 9701 (S.D.N.Y. July 15, 1994) ........ 7

*MacArthur v. Bank of New York,* 524 F. Supp. 1205 (S.D.N.Y. 1981) ............. 5

*O'Brien v. Alexander,* 101 F.3d 1479 (2d Cir. 1996) ......................... 1

*Patel v. Searles,* 305 F.3d 130 (2d Cir. 2002) .......................... 6

*Ramey v. District 141, Int'l Ass'n of Machinists & Aerospace Workers,*
378 F.3d 269 (2d Cir. 2004) ........................................... 5

*Schnall v. Marine Midland Bank,* 225 F.3d 263 (2d Cir. 2000) ................... 6

*Thryoff v. Nationwide Mut. Ins. Co.,* 2006 U.S. Dist. LEXIS 71706
(W.D.N.Y. Sept. 29, 2006) ............................................ 10

*Todd Shipyards Corp. v. Cunard Line, Ltd.,* 943 F.2d 1056 (9th Cir. 1991) ........ 4

*United States v. Arrington*, 867 F.2d 122 (2d Cir.1989) ............................ 5

State Cases

*Brennan v. Tremco, Inc.*, 25 Cal. 4th 310, 105 Cal. Rptr. 2d 790, 20 P.3d 1086
(Cal. 2001) ............................................................. 13-15

*Black v. Green Harbour Homeowner's Ass'n*, 37 A.D.3d 1013,
829 N.Y.S.2d 764 (3d Dep't 2007) ...................................... 7

*Burt v. Smith*, 181 N.Y. 1, 73 N.E. 495 (1905) ...................................... 7

*Campion Funeral Home v. State of New York*, 166 A.D.2d 32,
569 N.Y.S.2d 518 (3d Dep't 1991) ...................................... 1, 10

*Dudick v. Gulyas*, 277 A.D.2d 686, 716 N.Y.S.2d 407
(3rd Dep't 2000) ............................................................. 10

*Engel v. CBS, Inc.*, 93 N.Y.2d 195, 689 N.Y.S.2d 411, 711 N.E.2d 626 (1999) ... *passim*

*Groat v. Town Bd. of Glenville*, 73 A.D.2d 426, 426 N.Y.S.2d 339
(3d Dep't 1980) ............................................................. 11

*Hackett v. Milbank, Tweed, Hedley & McCloy*, 86 N.Y.2d 146,
630 N.Y.S.2d 274, 654 N.E.2d 95 (1995) ................................ 15

*Honzawa v. Honzawa*, 268 A.D.2d 327, 701 N.Y.S.2d 411
(1st Dep't 2000) ............................................................. 1, 10

*Howard v. City of New York*, 294 A.D.2d 184, 741 N.Y.S.2d 687
(1st Dep't 2002) ............................................................. 11

*Levy's Store, Inc. v. Endicott Johnson Corp.*, 272 N.Y. 155,
5 N.E.2d 74 (1936) ............................................................. 7

*Loftus v. Arthus*, 2007 N.Y. Misc. LEXIS 5874 (Sup. Ct. July 16, 2007) ........... 9

*Marion Steel Co. v. Alderton Dock Yards, Ltd.*, 223 A.D. 741, 227 N.Y.S. 678
(1st Dep't 1928) ............................................................. 7

*Molinoff v. Sassower*, 99 A.D.2d 528, 471 N.Y.S.2d 312 (2d Dep't 1984) ......... 11

*New York State Properties, Inc. v. Clark*, 183 A.D.2d 1003, 583 N.Y.S.2d 317
(3d Dep't 1992) ............................................................. 7

*Perryman v. Village of Saranac Lake,* 41 A.D.3d 1080, 839 N.Y.S.2d 290
(3d Dep't 2007) ................................................................... 7

*Rawson v. Leggett,* 184 N.Y. 504, 77 N.E. 662 (1906) ................................. 7

*Reade v. Halpin,* 193 A.D. 566, 184 N.Y.S. 438 (3d Dep't 1920) .................. 10

*Rosenberg v. Metlife, Inc.,* 8 N.Y.3d 359, 834 N.Y.S.2d 494,
866 N.E.2d 439 (2007) ................................................................. 3

*Sachs v. Weinstein,* 208 A.D. 360, 203 N.Y.S. 449 (1st Dep't 1924) ............... 11

*Strumpf v. Asdourian,* 2006 N.Y. Misc. LEXIS 3976 (Dec. 12, 2006) ............. 10, 13

*Willard v. Holmes, Booth & Haydens,* 142 N.Y. 492, 37 N.E. 480 (1894) .......... 10

## PRELIMINARY STATEMENT

Defendant Mark Abeshouse ("Abeshouse") respectfully submits this memorandum of law in support of his motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims against him, with prejudice, and for such other and further relief as the Court deems just and proper.

Sankin has not, and cannot, properly allege a claim for malicious prosecution against Mark Abeshouse arising out of the arbitration proceeding before the National Association of Securities Dealers ("NASD") entitled *Augustus Capital LLC v. Sankin,* NASD Dispute Resolution No. 05-02528 (the "NASD Proceeding"). In New York, a successful cause of action for malicious prosecution must have four elements: (1) the initiation of an action by the defendant; (ii) begun with malice; (iii) without probable cause to believe it could succeed; and (iv) that ends in favor of the plaintiff. *See O'Brien v. Alexander,* 101 F.3d 1479, 1484 (2d Cir. 1996); *Campion Funeral Home v. State*, 166 A.D.2d 32, 569 N.Y.S.2d 518 (3d Dep't 1991). If, as here, the prior action was a civil action, the plaintiff must also prove special damages resulting from such action. *Honzawa v. Honzawa*, 268 A.D.2d 327, 701 N.Y.S.2d 411 (1st Dep't 2000). Sankin's complaint falls short of meeting these requirements, and also fails to properly include sufficient facts to afford the defendants fair notice of the grounds upon which Sankin's malicious prosecution claim are based. Simply amending the complaint, will not save it.

First, Sankin's allegation that "the claims against Sankin in the NASD arbitration lacked probable cause" was previously argued in the NASD Proceeding in connection with Sankin's argument that such proceeding was frivolous, i.e., lacked probable cause, and that Sankin therefore should be awarded attorneys' fees pursuant to New York Uniform Rule § 1301.1. The NASD panel rejected Sankin's request for attorneys' fees. Accordingly, Sankin has lost the

argument that the NASD Proceeding was "frivolous" and is collaterally estopped from re-asserting that either Augustus Capital LLC ("Augustus"), its principal, Abeshouse, or Abeshouse's wife, Rhoda Leonard, did not have probable cause with respect to the NASD Proceeding.

Second, Sankin has failed to properly allege special damages resulting from the commencement of the NASD Proceeding. New York courts have defined special damages as injury or interference with the plaintiff's person, property or business that entails "some concrete harm that is considerably more cumbersome than the physical, psychological, or financial demands of defending a lawsuit." *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 205, 689 N.Y.S.2d 411, 711 N.E.2d 626 (1999). Sankin's allegations that he "was forced to incur substantial costs, fees and disbursements," that his recovery from cancer was "adversely affected," and that his "relationship" with Joseph Edelman was somehow damaged are inadequate to establish special damages under New York law. To plead a case for malicious prosecution, Sankin, at a minimum, must allege "a highly substantial and identifiable interference with person, property or business." *Id.* Because he has failed to do so, his case must be dismissed. Indeed, Sankin's allegations concerning his damages are pleaded so broadly that defendants are not afforded sufficient information to defend themselves, providing yet another reason for dismissal.

Third, Mark Abeshouse did not initiate the NASD Proceeding – Augustus did. Abeshouse was not a party to the NASD Proceeding in his individual capacity. The factual allegations contained in the Complaint are not sufficient to pierce the corporate veil. As a NASD broker-dealer, Augustus is a highly regulated entity with a separate corporate existence. Accordingly, Sankin has failed to meet the first element of a claim for malicious prosecution, i.e., that the prior action have been initiated by the <u>defendant</u>.

2

Finally, although the issue has not been squarely addressed in this forum, New York

courts would likely hold that the NASD Proceeding does not support a malicious prosecution

action because the arbitration was intended to be final and non-reviewable, and, accordingly,

resolve all disputes between the parties.

## FACTUAL BACKGROUND

### The NASD Proceeding

Augustus commenced the NASD Proceeding on or about May 13, 2005 by the filing of a

Statement of Claim. Stewart Ex. A, NASD Award, at 1.[1] In his Statement of Claim, Augustus

sought damages for breach of contract. *Id.,* at 1-2. Sankin answered the Statement of Claim on

or about September 16, 2005, and asserted a counterclaim for defamation. *Id.* Sankin, in his

Counterclaim, requested unspecified damages against Augustus for defamation, expungement,

attorneys' fees and costs. *Id.,* at 2. The arbitration took place on April 9-11 and June 12-14,

2007. *Id.,* at 3.[2]

In his post-hearing brief, Sankin argued for the imposition of attorneys fees. In relevant

part, Sankin argued:

> We believe the Panel also possesses the authority to award attorneys' fees
> because Claimant has engaged in frivolous conduct. New York Rules of
> Court § 130-1.1(a)-(c) provides that such fees may be awarded if the
> adversary engages in frivolous conduct. These Rules define a frivolous action
> as one that (1) is completely without merit in law and cannot be supported by
> a reasonable argument for an extension, modification or reversal of existing
> law; (2) is undertaken primarily to delay or prolong the resolution of the
> litigation, or to harass or maliciously injure another; or (3) asserts material
> factual statements that are false. As stated in the summation, we believe that
> Augustus' claims are completely without merit, vindictive, malicious, and,

---

[1] "Stewart Ex. __" refers to an exhibit attached to the accompanying Declaration of Charles A. Stewart, III.

[2] On the first day of the arbitration, Sankin withdrew his claim for defamation in light of the Court of Appeal's decision in *Rosenberg v. Metlife, Inc.,* 8 N.Y.3d 359, 834 N.Y.S.2d 494, 866 N.E.2d 439 (2007) (holding that statements contained in NASD employee termination notice (form U-5) were subject to an absolute privilege in a suit for defamation).

above all, frivolous.  Should Mr. Sankin prevail, he is entitled to legal fees and expenses.

Stewart Ex. B, Sankin Post-Hearing Br. at 11.

Abeshouse in his post-hearing brief argued that neither Augustus nor Sankin had carried the burden of demonstrating that the other side litigated the NASD Proceeding in bad faith.  *See* Stewart Ex. C, Augustus Post-Hearing Br. at 9 (citing *Todd Shipyards Corp. v. Cunard Line, Ltd.,* 943 F.2d 1056, 1064 (9th Cir. 1991) (recognizing bad faith exception and finding that arbitrator may award attorneys' fees when "the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons"); *Interchem Asia 2000 PTE Ltd. v. Ocean Petrochemicals AG,* 373 F. Supp. 2d 340, 355 (S.D.N.Y. 2005) (same)).

On July 26, 2007, after six days of hearing evidence presented from both sides from numerous witnesses (including four experts), the arbitration panel rendered its award pursuant to Section 10330 of the NASD Code of Arbitration.  Stewart Ex. A, Award.  The arbitration panel denied both Augustus' contract and quasi-contract claims and Sankin's request for attorneys' fees, and recommended, but did not order, the expungement of Sankin's U-5.  The Award stated:

> After considering the pleadings, the testimony and evidence presented at the hearing, and the post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1.    Claimant's claims are denied in their entirety.

2.    The Panel recommends the expungement of Respondent Andrew Sankin's U5 filed by Claimant Augustus Capital on August 6, 2004. The Panel recommends that the Reason for Termination section should be expunged and that the Reason for Termination be changed to voluntary. The Panel's recommendation is based upon the defamatory nature of the information.

3.    Any and all relief not specifically addressed herein is denied.

Stewart Ex. A, Award at 2.

Subsequently, Sankin caused the NASD Award to be docketed and entered in the

Supreme Court of the State of New York, County of New York.  Stewart Ex. D, Notice of Entry.

### The Instant Action

Sankin commenced the instant malicious prosecution action against Abeshouse and

Rhonda Leonard on October 12, 2007 in the Supreme Court of State of New York.  The

Complaint was filed by Dickstein Shapiro, LLP ("Dickstein"), the same law firm that

represented Sankin in the NASD Proceeding, and it contained specific allegations reflecting that

a Dickstein lawyer, Adam Weiss, would be a witness on the element of Abeshouse's alleged

malice against Sankin based on a conversation that took place between Mr. Weiss and

Abeshouse outside the presence of Augustus' lawyer. *See* Stewart Ex. E, Complaint, ¶¶ 34, 39.[3]

Stewart Ex. E, Complaint.  The Complaint seeks damages for "not less than $500,000" relating

to "substantial costs, fees and disbursements" Sankin purportedly incurred in the NASD

Proceeding. *Id.,* ¶ 42. Sankin's Complaint also alleges that "Sankin's recovery from cancer was

adversely affected," and that "Defendants' malicious prosecution damaged Sankin's relationship

with [Joseph] Edelman and was a contributing factor in Sankin's removal as an officer of

Perceptive Advisors." *Id.*  On November 20, 2007, Defendants caused Sankin's state court

action to be removed to federal court on the basis of diversity.

---

[3]   On January 10, 2008, Dickstein moved to be relieved as counsel for Sankin on the basis that one or more
Dickstein attorneys would be witnesses.  The New York Code of Professional Responsibility, Disciplinary Rule 5-
102(a) provides, in relevant part, that "a lawyer shall not act, or accept employment that contemplates the lawyer's
acting, as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought
to be called as a witness on a significant issue on behalf of the client." N.Y. Code of Prof. Resp. DR 5-102(a); *see
also Ramey v. District 141, Int'l Ass'n of Machinists & Aerospace Workers,* 378 F.3d 269, 283 (2d Cir. 2004)
("[W]hen one individual assumes the role of both advocate and witness it '[may] so blur[] the line between
argument and evidence that the jury's ability to find facts is undermined.'") (quoting *United States v. Arrington,* 867
F.2d 122, 126 (2d Cir.1989)) (alterations in original); *see also MacArthur v. Bank of New York,* 524 F. Supp. 1205,
1208 (S.D.N.Y. 1981) ("A jury may view an attorney as possessing special knowledge of a case and therefore
accord a testifying attorney's arguments undue weight.").  Dickstein's motion was granted on January 11, 2008.

## ARGUMENT

## I.    ALL CLAIMS AGAINST MARK ABESHOUSE MUST BE DISMISSED

### A.    Standards for Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint and draw all *reasonable inferences* in favor of the plaintiff. *Patel v. Searles,* 305 F.3d 130, 135 (2d Cir. 2002). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendant fair and sufficient notice of the claims and the grounds upon which they are based and demonstrate a right to relief. *See Bell Atlantic v. Twombly,* U.S. , 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). Although detailed factual allegations are not required, a plaintiff must provide the grounds of his entitlement to relief beyond mere "labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65; *see also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007). Moreover, the United States Supreme Court has stated, "when the allegations in a complaint, however true, [cannot] raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic v. Twombly,* 127 S. Ct. at 1969 (internal citations omitted). In determining a motion to dismiss, the court is permitted to consider materials outside the record that plaintiff relied upon in drafting the complaint or that are integral to a complaint if there are no disputes as to the authenticity, accuracy and relevance of such materials, and the court may do so without converting the motion to dismiss to one for summary judgment. *See, e.g., Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 47 (2d Cir. 1991); *Schnall v. Marine Midland Bank,* 225 F.3d 263, 266 (2d Cir. 2000). Application of the settled law to the allegations of Sankin's Complaint compels the dismissal of Sankin's claims against Abeshouse.

**B.**    **Sankin is Collaterally Estopped from Asserting that Abeshouse Lacked Probable Cause to Commence the NASD Proceeding**

In determining whether a defendant in a malicious prosecution action had probable cause to bring the prior lawsuit, the question is whether defendant was aware of facts, actual or apparent, strong enough to "justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of. . . . One may act upon what appears to be true, even if it turns out to be false, provided [one] believes it to be true, and the appearances are sufficient to justify the belief as reasonable." *Levitin v. Miller,* 1994 U.S. Dist. LEXIS 9701 (S.D.N.Y. July 15, 1994), quoting, *Burt v. Smith,* 181 N.Y. 1, 5, 73 N.E. 495, 496 (1905).   *See also New York State Properties, Inc. v. Clark,* 183 A.D.2d 1003, 1006, 583 N.Y.S.2d 317, 320 (3d Dep't 1992).   Moreover, the plaintiff must establish that there was no probable cause for any claim asserted in the underlying action.  *Perryman v. Village of Saranac Lake,* 41 A.D.3d 1080, 839 N.Y.S.2d 290 (3d Dep't 2007); *Black v. Green Harbour Homeowner's Ass'n,* 37 A.D.3d 1013, 829 N.Y.S.2d 764 (3d Dep't 2007).  Although termination of the underlying case in plaintiff's favor is a necessary element of a claim for malicious prosecution, by itself it is not sufficient to prove lack of probable cause.  *Marion Steel Co. v. Alderton Dock Yards, Ltd.,* 223 A.D. 741, 227 N.Y.S. 678, 680 (1st Dep't 1928).  In an action for malicious prosecution, "the propriety of defendants' conduct ... is to be decided by the facts as they appeared to be at the time the prosecution was instituted." *Levy's Store, Inc. v. Endicott Johnson Corp.,* 272 N.Y. 155, 161, 5 N.E.2d 74 (1936) (citing *Rawson v. Leggett,* 184 N.Y. 504, 511, 77 N.E. 662 (1906)).

The issue of whether the underlying action was commenced in bad faith, and therefore lacked probable cause, was strenuously argued and fully litigated in the NASD Proceeding.  In the NASD Proceeding, as he does here, Sankin argued he should be awarded attorneys fees and costs on the ground that the NASD Proceeding was "frivolous."  Among other things, Sankin

7

stated that he was entitled to attorneys' fees under Uniform Rule § 130-1.1(a)-(c), arguing in his

post-arbitration brief: "As stated in summation, we believe that Augustus's claims are

completely without merit, vindictive, malicious, and, above all, frivolous." Stewart Ex. B,

Sankin Post-Hearing Br., at p. 11.   In his new action, Sankin claims these same attorneys' fees

constitute a component of his damages. Stewart Ex. E, Complaint, ¶ 40 ("Sankin was forced to

incur substantial costs, fees, and disbursements in defending against Defendants' vindictive

pursuit of a frivolous arbitration").

> In the arbitration, Augustus opposed Sankin's request for attorney's fees, stating, in part:

> Sankin's position that Augustus' claims are frivolous is completely without
> merit.  Sankin's paperwork production on revenue attribution/sharing, sent
> monthly to Augustus, memorializes the incontrovertible fact that the parties
> had an agreement respecting the Marketing Fee.  Sankin himself wrote
> emails confirming that the broker-dealer component was "an essential" part
> of the parties' understanding.  Elliot Weissbluth [Augustus' expert on hedge
> fund fees] testified that registered representatives often pay a flat percentage
> of their compensation to the broker-dealer.  He specifically testified about
> requiring his extremely qualified registered representatives to pay the broker
> dealer a fee of 15% of the gross revenue.  George Mazin [Sankin's expert on
> hedge fund fees] testified that he had not heard of a case where a registered
> representative generating millions of dollars through his broker-dealer
> would not pay the broker-dealer a cent – a potential result if the terms of the
> Agreement were the ones suggested by Sankin in this proceeding.  Steve
> Guzik, the accountant from Eisner [another Sankin expert], conceded that
> conservative accounting practices do not require an accountant to record
> deferred income that is contingent on a future event and that, ultimately,
> how income is recorded is left to the judgment of the accountant.  Sankin
> testified that he is litigating against Perceptive and arguing that he is entitled
> to be paid a percentage of Net Assets under management for as long as
> Perceptive has assets – a compensation structure vastly broader in scope
> than his Marketing Fee agreement with Augustus (but philosophically
> identical to Augustus' Marketing Fee argument against him).  Also, Sankin
> conceded in an email that he did not ascribe "bad motives" to Abeshouse,
> and also admitted that, at a minimum, the parties had a disagreement as to
> whether commissions would continue to be paid to Augustus if Sankin
> changed broker-dealers.  *See* R62.  Regardless of the outcome, there is no
> support for determining that either party litigated this case in bad faith.

Stewart Ex. C, Augustus Post-Hearing Br., at 9-10.

8

Under NASD Code of Arbitration § 10330(b), "[u]nless the applicable law directs otherwise, all awards rendered pursuant to this Code shall be deemed final and not subject to review or appeal." The arbitration panel, in the decision Sankin subsequently docketed in Supreme Court of the State of New York, County of New York (Stewart Ex. D, Notice of Entry), after being squarely presented with Sankin's argument that the NASD Proceeding was frivolous under Uniform Rule § 130.1, denied Sankin's request for an award of attorneys' fees and costs. Accordingly, Sankin is collaterally estopped from continuing to argue, as he did in the NASD Proceeding, that there was no probable cause for Augustus to commence the NASD Proceeding. *See Loftus v. Arthus,* 2007 N.Y. Misc. LEXIS 5874 (Sup. Ct. July 16, 2007) (citing New York collateral estoppel cases and holding that malicious prosecution claim should be dismissed because plaintiff had failed to demonstrate probable cause where it previously had made a motion for sanctions under Uniform Rule § 130.1 that was denied).

### C.    Sankin Has Failed to Properly Allege Special Damages

New York law requires that the plaintiff in a malicious prosecution action plead special damages when the underlying action was a civil proceeding. New York courts have defined special damages to be an injury or interference with the plaintiff's person, property or business that entails "some concrete harm that is considerably more cumbersome than the physical, psychological, or financial demands of defending a lawsuit." *Engel v. CBS, Inc.,* 93 N.Y.2d 195, 205, 711 N.E.2d 626, 631, 689 N.Y.S.2d 411, 417 (1999). The court in *Engel* emphasized that "malicious prosecution claims are not encouraged," and further stated:

> [W]ithout a clear and satisfactory showing that plaintiffs in the previous action lacked reasonable grounds, the case [will] be dismissed. . . . To hold otherwise would mean that malicious prosecution cases could be maintained for the unsuccessful prosecution of many of the actions which come upon appeal to this court, and a large proportion of unsuccessful actions could be followed by such an action, and litigation be thus interminably prolonged.

9

93 N.Y.2d at 202 (citations omitted). The danger of permitting litigants to prolong bitter disputes is evident here, where Sankin, alleged to be a person who has "enjoyed tremendous success in the hedge fund world," (Stewart Ex. E, Complaint, ¶ 4), seeks to incessantly prolong litigation between Augustus (through its principal and the principal's wife) and himself, notwithstanding the fact that the NASD arbitration panel heard all of the evidence and the same arguments Sankin makes here, and rejected the argument that Augustus' arbitration was frivolous.

Under New York law, special damages must exceed "the damages normally attendant upon being sued." *Honzawa, supra,* 268 A.D.2d at 329; *see also Campion Funeral,* 569 N.Y.S.2d at 521. Thus, damages in the form of attorneys' fees, legal expenses, harm to reputation and emotional damage and mental distress are not considered "special damages" under New York law.[4] In *Engel,* the Court of Appeals held that New York law imposes a requirement that the plaintiff in a malicious prosecution action demonstrate "a highly substantial and identifiable interference with person, property or business." 93 N.Y.2d at 205.

The types of "damages" that have been considered sufficient by New York courts to constitute "special injury" include some type of "interference with his person or property," *Willard v. Holmes, Booth & Haydens,* 142 N.Y. 492, 495, 37 N.E. 480 (1894), "such as arrest, attachment, or injunction." *Kalso Systemet, Inc. v. Jacobs,* 474 F. Supp. 666, 670 (S.D.N.Y. 1979) (citations omitted). *See Reade v. Halpin,* 193 A.D. 566, 184 N.Y.S. 438 (3d Dep't 1920)

---

[4] *But see Thryoff v. Nationwide Mut. Ins. Co.,* 2006 U.S. Dist. LEXIS 71706 (W.D.N.Y. Sept. 29, 2006) (finding that "complaint [which] alleges that as a result of the defendants' actions against them ... the plaintiffs suffered severe emotional harm which required psychological counseling and medication ... satisfies a claim of special injury.'"). *Thryoff* is inapposite. First, Sankin does not allege "severe emotional injury" but non-specific "adverse [physical] affects." Second, contrary to the statement in *Thryoff, Engel* states that injury from emotional damage or mental stress does not constitute special injury. *See also In re Eerie World Entertainment, L.L.C.,* 2006 Bankr. LEXIS 770, at * 29 (Bank. S.D.N.Y. Apr. 28, 2006) (stating that damages in the form of "emotional damage and mental stress ... cannot be considered special damages under New York law.") (citing *Engel* and *Campion Funeral*).

(involuntary commitment). Thus, New York courts have found special damages in cases where the plaintiff alleges with particularity the loss of specific business and income as a result of the filing of the underlying action. *See, e.g., Dudick v. Gulyas,* 277 A.D.2d 686, 688, 716 N.Y.S.2d 407, 410 (3rd Dep't 2000) (chiropractor's loss of business was special injury resulting from disciplinary action brought by defendant); *Willard v. Holmes, Booth and Haydens, supra,* 142 N.Y. 492 (attachment of property); *Strumpf v. Asdourian,* 2006 N.Y. Misc. LEXIS 3976 (Dec. 12, 2006) (hike in malpractice rates and loss of clients); *First Merch. Bank OSH, Ltd. v. Vill. Roadshow Pictures (U.S.A.) Inc.,* 2002 U.S. Dist. LEXIS 11769 (S.D.N.Y. June 28, 2002) (wrongful attachment of bank account); *Groat v. Town Bd. of Glenville,* 73 A.D.2d 426, 426 N.Y.S.2d 339 (3d Dep't 1980) (police officer suspended without pay, dismissed from the force, disgraced in the department and in the community after charges of misconduct lodged against him).

In the absence of an allegation that the person or property of the party seeking to bring a claim of malicious prosecution has been "interfered with by some incidental remedy, such as arrest, attachment or injunction," *Sachs v. Weinstein,* 208 A.D. 360, 366, 203 N.Y.S. 449, 453 (1st Dep't 1924) (citation omitted), or that the party lost specific, identifiable business and income, New York courts routinely have dismissed malicious prosecution claims. *See Engel,* 689 N.Y.S.2d at 417-18; *Molinoff v. Sassower,* 99 A.D.2d 528, 471 N.Y.S.2d 312 (2d Dep't 1984); *Howard v. City of New York,* 294 A.D.2d 184, 741 N.Y.S.2d 687 (1st Dep't 2002) (plaintiff, a correction officer, who previously had faced charges and specification as a result of false allegations that she had appeared in a pornographic video, failed to allege special injury); *Campion Funeral,* 569 N.Y.S.2d at 521; *Kaslof v. Global Health Alternatives, Inc.,* 2000 U.S. Dist. LEXIS 21053 (E.D.N.Y. June 29, 2000) (recommending dismissal of malicious prosecution

11

claim where plaintiffs merely sought compensatory and punitive damages plus costs and attorneys' fees), adopted, 2001 U.S. Dist. LEXIS 2612 (E.D.NY. Feb. 13, 2002).

In *Engel,* for example, the Court of Appeals held that the plaintiff's allegations of injury did not rise to the level of a "special injury." In *Engel,* a lawyer representing a client, Donald Thomas Scholz, in an action against CBS, Inc., was thereafter sued by CBS, along with Scholz, in a second action. According to the deposition testimony of its then President, "CBS instituted the action against Engel, at least in part, to dissuade Engel from representing Scholz." 93 N.Y.2d at 199.  The *Engel* court noted that Engel alleged that, after CBS commenced the lawsuit against him,

> "rendering effective legal services to Scholz became more onerous and responding to discovery requests more burdensome, and that he had to absorb the costs himself.  He further alleges that a least one potential client among possible others were dissuaded from hiring him, and in a general way, that he suffered emotional and financial damage."

*Id.,* at 200.

In reviewing these facts, the Court of Appeals stated:

> The claims in the facts presented to us of lost business likewise fail to muster the requisite special injury.  These claims are actually tangential to the main claims of an increased work burden due to the conflicts, and are primarily asserted in general rather than specific terms.  Even though we can foresee specific, verifiable loss of business providing the necessary grievance, the loss of one client along with vague allegations of reputational loss, given Engel's established practice, are not sufficient.  Moreover, there has been no allegation that the consequences, in terms of lost business, have marred, in any specific and meaningful way, Engel's or his law firm's financial opportunities.

*Id.,* at 206-07.

Similarly, Sankin's vague allegations that his "recovery from cancer was adversely affected"[5] or that "Defendants' malicious prosecution damaged Sankin's relationship with

---

[5] Sankin's attorney has informed the Court that Mr. Sankin is "free from cancer."  *See* January 8, 2008 letter from Ira Lee Sorkin to Honorable Charles L. Brieant.

Joseph Edelman and was a contributing factor in Sankin's removal as an officer of Perceptive Advisors" do not constitute the "highly substantial and identifiable interference with person, property or business" required by New York law to constitute special injury for a malicious prosecution claim. Indeed, Sankin does not allege that the NASD Proceeding was the reason that Sankin was removed as an officer of Perceptive (as opposed to reasons unrelated to the arbitration), or that such removal has caused Sankin financial harm.

Moreover, Sankin's allegations respecting the "adverse affects" that the NASD Proceeding supposedly had on his cancer recovery, or the manner in which his relationship with Joseph Edelman was allegedly somehow damaged, do not include sufficient facts to afford defendants fair notice of the grounds upon which Sankin's claims are based. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. at 1964-65; *Iqbal v. Hasty*, 490 F.3d at 157-58 (2d Cir. 2007). Accordingly, the complaint should be dismissed on this ground as well.

### D.     Abeshouse Was Not a Party in the Action Below

The first element of a malicious prosecution claim requires that the plaintiff demonstrate that the defendant commenced the underlying action. For example, in *Strumpf v. Asdourian, supra,* 2006 N.Y. Misc. LEXIS 3976, the court dismissed a malicious prosecution claim against the controlling shareholder of the company that commenced the underlying action on the ground that he was not a party to such underlying action in his individual capacity.  The court noted that the complaint did not set forth sufficient facts to pierce the corporate veil. *Id.,* at *10. Likewise, Abeshouse was not a party to the NASD Proceeding. Accordingly, as in *Strumpf,* Sankin's malicious prosecution claims against Abeshouse should be dismissed, because Sankin has not alleged that Augustus' corporate veil should be pierced.

13

**E.    The NASD Proceeding Does Not Provide the Basis for a Malicious Prosecution Action**

In *Brennan v. Tremco, Inc.,* 25 Cal. 4th 310, 105 Cal. Rptr. 2d 790, 20 P.3d 1086, 1088 (Cal. 2001), the California Supreme Court dismissed a malicious prosecution action based on an underlying civil arbitration proceeding.  The *Brennan* court held that "whether the underlying action started in court or in arbitration, if it ends in contractual arbitration, that termination will not support a malicious prosecution action." *Id.*  The *Brennan* court offered two rationales for its holding:  (1) preventing an "'unending roundelay of litigation'" by not expanding derivative tort litigation; and (2) encouraging parties to choose binding arbitration "to end the entire dispute." *Id.*  The *Brennan* court stated in relevant part:

> The growing antipathy for litigation spawning litigation, together with the recognition that the parties who voluntarily choose arbitration generally expect and desire that the arbitration will end their dispute, convinces us that arbitration should not be the basis for future malicious prosecution claims.

*Id.,* at 1089.  *See also Hakakha v. Peregrine Fin. & Sec. Inc.,* 177 Fed. Appx. 587 (9th Cir. 2006) (following *Brennan* and affirming dismissal, with prejudice, of malicious prosecution claim based on civil arbitration proceeding).

Although New York courts have not squarely addressed the issue of whether a civil arbitration proceeding can be the basis for a future malicious prosecution action, the Court of Appeals would likely follow the reasoning of the *Brennan* court and dismiss a case, like this one, based on a civil arbitration proceeding.   The Court of Appeals, like the California Supreme Court in *Brennan,* has emphasized that the better remedy for excessive litigation is to apply sanctions, not expand opportunities for initiating one or more rounds of malicious prosecution litigation after the first action has been concluded. *Compare Engel,* 93 N.Y. at 202-03 (noting

14

that malicious prosecution claims are not encouraged and emphasizing that sanctions are available for frivolous conduct) with *Brennan,* 20 P. 3d at 1088-89 (same). As the Court of Appeals stated in *Engel*:

> Financial burdens resulting from frivolous cases can, in some measure, be assuaged by awarding fees and costs as authorized by rules and statute. In addition, we cannot ignore the strong possibility that absent the additional hurdle of an added grievance, successful defendants, seeking additional vindication for the burdens imposed by the prior litigation, will claim malicious prosecution, and, if unsuccessful in that claim, their opponents will be all too willing to return the favor.

93 N.Y.2d at 204.

The *Brennan* court also found that, to permit a malicious prosecution action to be based on arbitration, would defeat the purpose of arbitration to be an expeditious and informal means of resolving disputes. The *Brennan* court stated:

> [T]he nature of private arbitration does not always allow for a ready determination of whether or why the prior action actually terminated in the malicious prosecution plaintiff's favor ... [A]n arbitrator need not explain the basis of an award. The arbitrator's decision is also generally non-reviewable.

20 P. 3d at 1090.

New York courts similarly have a public policy of strongly encouraging arbitration. *See Hackett v. Milbank, Tweed, Hedley & McCloy,* 86 N.Y.2d 146, 630 N.Y.S.2d 274, 654 N.E.2d 95 (1995). If presented with the issue, the Court of Appeals would likely hold that New York law prohibits basing a malicious prosecution claim on a civil arbitration proceeding.

## CONCLUSION

For the reasons stated herein, Mark Abeshouse respectfully requests that Plaintiff's Complaint be dismissed in its entirety as against him, with prejudice, and that the Court award such other and further relief as it deems proper under the circumstances of this action, such as attorneys' fees and costs available at law.

Dated: New York, New York
        January 11, 2008

                                    Respectfully submitted,

                                    **STEWART OCCHIPINTI, LLP**


                                    By:_____/s/_____
                                            Charles A. Stewart, III (CS-7099)
                                    65 West 36th Street
                                    New York, New York 10018
                                    (212) 239-5500

                                    *Attorneys for Defendant Mark Abeshouse*

16