UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
                                                            :
ANDREW C. SANKIN,                                           :
                                                            :
                              Plaintiff,                    :
              - v. -                                        :
                                                            :          07 CV 10491 (CLB)(LMS)
MARK ABESHOUSE and                                          :
RHONDA LEONARD,                                             :
                                                            :
                              Defendants.                   :
                                                            :
                                                            :
------------------------------------------------------------x


# MEMORANDUM OF LAW OF RHONDA LEONARD
# IN SUPPORT OF HER MOTION TO DISMISS THE COMPLAINT


LAW OFFICE OF
RICHARD E. SIGNORELLI

Richard E. Signorelli (RS-7976)
799 Broadway, Suite 539
New York, NY 10003
Telephone:    212 254 4218
Facsimile:    212 254 1396
rsignorelli@nycLITIGATOR.com℠
www.nycLITIGATOR.com℠

Attorneys for Defendant
Rhonda Leonard

January 11, 2008

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT                1

STATEMENT OF RELEVANT PROCEDURAL HISTORY AND FACTS          4

I. Relevant Procedural History                               4
    A. The NASD Arbitration Proceeding                       4
    B. Sankin's Malicious Prosecution Against Abeshouse and Leonard   6
        1. Commencement of State Court Action              6
        2. Removal of State Court Action to this Court     6
        3. Stipulation and Order                          7

II. Relevant Allegations of Sankin's Complaint              7
    A. Introduction                                          7
    B. Allegations Concerning the Initiation of the Prior Proceeding   7
    C. Allegations Concerning Damages                        8
    D. Allegations Concerning Probable Cause                 8
    E. Allegations Concerning Malice                         8

ARGUMENT                                                    9
THE COMPLAINT SHOULD BE DISMISSED

I. Overview                                                 9

II. Applicable Legal Standards                              9
    A. Legal Standards Regarding the Adjudication of a Rule 12(b)(6) Motion   9
    B. Legal Standards Applicable to Asserting a Malicious Prosecution Claim   10

III. Discussion                                             11
    A. Sankin is Collaterally Estopped From Alleging the Lack of Probable Cause
       and the Lack of Probable Cause Element is Insufficiently Pleaded   11
    B. Sankin Has Failed to Sufficiently Allege Special Damages   15
    C. Leonard Did Not Initiate the Prior Proceeding         19
    D. Sankin Has Failed to Sufficiently Allege Malice Against Leonard   20
    E. Malicious Prosecution Claim Should Not Arise From a Prior Arbitration   22

CONCLUSION                                                  24

# TABLE OF AUTHORITIES

Page

Federal Cases

*Bell Atl. v. Twombly,*    U.S.   , 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ....... 9-10, 19

*Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42 (2d Cir. 1991) .............. 10

*First Merch. Bank OSH, Ltd. v. Vill. Roadshow Pictures (U.S.A.) Inc.,*
2002 U.S. Dist. LEXIS 11769 (S.D.N.Y. June 28, 2002) ........................ 16

*Hakakha v. Peregrine Fin. & Sec. Inc.,* 177 Fed. Appx. 587 (9th Cir. 2006) .... 23

*Hamilton Chapter of Alpha Delta Phi, Inc. V. Hamilton College,*
128 F.3d 59, 62 (2d Cir. 1997)................................................................... 9

*Interchem Asia 2000 PTE Ltd. v. Ocean Petrochemicals AG,*
373 F. Supp. 2d 340 (S.D.N.Y. 2005) .................................................. 5

*Iqbal v. Hasty,* 490 F.3d 143 (2d Cir. 2007) ........................................... 10, 19

*Kalso Systemet, Inc. v. Jacobs,* 474 F. Supp. 666 (S.D.N.Y. 1979) ............... 16

*Kaslof v. Global Health Alternatives, Inc.,* 2000 U.S. Dist. LEXIS 21053
(E.D.N.Y. June 29, 2000), adopted, 2001 U.S. Dist. LEXIS 2612
(E.D.NY. Feb. 13, 2002)........................................................................ 17

*Levitin v. Miller,* 1994 U.S. Dist. LEXIS 9701 (S.D.N.Y. July 15, 1994) ........ 11

*O'Brien v. Alexander,* 101 F.3d 1479 (2d Cir. 1996) ................................. 11, 20

*Papasan v. Allain,* 478 U.S. 265, 286 (1986)........................................... 10

*Patel v. Searles,* 305 F.3d 130 (2d Cir. 2002) ......................................... 9

*Schnall v. Marine Midland Bank,* 225 F.3d 263 (2d Cir. 2000) ..................... 10

*Tedeschi v. Smith Barney,* 548, F.Supp. 1172, 1172 (S.D.N.Y. 1982).................... 17

*Tedeschi v. Smith Barney,* 579 F.Supp. 657, 661 (S.D.N.Y. 1984), *aff'd,*
757 F.2d 465, 466 (2d Cir. 1985), *cert. denied, Chapman v. Smith Barney,*
474 U.S. 850 (1985)................................................................................. 18

*Thryoff v. Nationwide Mut. Ins. Co.,* 2006 U.S. Dist. LEXIS 71706
(W.D.N.Y. Sept. 29, 2006) ................................................................ 15

*Todd Shipyards Corp. v. Cunard Line, Ltd.,* 943 F.2d 1056 (9th Cir. 1991) ........ 5


31 State Cases

*Brennan v. Tremco, Inc.,* 25 Cal. 4th 310, 105 Cal. Rptr. 2d 790, 20 P.3d 1086
(Cal. 2001) ........................................................................................ 22-24

*Burt v. Smith,* 181 N.Y. 1, 73 N.E. 495 (1905) ...................................... 11

*Campion Funeral Home v. State of New York,* 166 A.D.2d 32,
569 N.Y.S.2d 518 (3d Dep't 1991) ...................................................... 11, 15, 17

*Dudick v. Gulyas,* 277 A.D.2d 686, 716 N.Y.S.2d 407
(3rd Dep't 2000) ................................................................................ 16

*Engel v. CBS, Inc.,* 93 N.Y.2d 195, 689 N.Y.S.2d 411, 711 N.E.2d 626 (1999) ... *passim*

*Groat v. Town Bd. of Glenville,* 73 A.D.2d 426, 426 N.Y.S.2d 339
(3d Dep't 1980) ................................................................................ 16

*Hackett v. Milbank, Tweed, Hedley & McCloy,* 86 N.Y.2d 146,
630 N.Y.S.2d 274, 654 N.E.2d 95 (1995) ............................................. 24

*Honzawa v. Honzawa,* 268 A.D.2d 327, 701 N.Y.S.2d 411
(1st Dep't 2000) ................................................................................ 11, 15

*Hornstein v. Wolf,* 109 A.D.2d 129, 133, 491 N.Y.S.2d 183, 187 (2d Dept. 1985). 20

*Howard v. City of New York,* 294 A.D.2d 184, 741 N.Y.S.2d 687
(1st Dep't 2002) ................................................................................ 17

*Levy's Store, Inc. v. Endicott Johnson Corp.,* 272 N.Y. 155,
5 N.E.2d 74 (1936) ........................................................................... 12

*Loftus v. Arthus,* 2007 N.Y. Misc. LEXIS 5874 (Sup. Ct. July 16, 2007) ........... 14

*Marion Steel Co. v. Alderton Dock Yards, Ltd.,* 223 A.D. 741, 227 N.Y.S. 678
(1st Dep't 1928) ................................................................................ 12

*Molinoff v. Sassower,* 99 A.D.2d 528, 471 N.Y.S.2d 312 (2d Dep't 1984) ......... 17

*New York State Properties, Inc. v. Clark*, 183 A.D.2d 1003, 583 N.Y.S.2d 317
(3d Dep't 1992) ............................................................................... 11

*Perryman v. Village of Saranac Lake,* 41 A.D.3d 1080, 839 N.Y.S.2d 290
(3d Dep't 2007) ......................................................................... 11, 14

*Rawson v. Leggett,* 184 N.Y. 504, 77 N.E. 662 (1906) ................................. 12

*Reade v. Halpin,* 193 A.D. 566, 184 N.Y.S. 438 (3d Dep't 1920) .................. 16

*Rosenberg v. Metlife, Inc.,* 8 N.Y.3d 359, 834 N.Y.S.2d 494,
866 N.E.2d 439 (2007) ................................................................... 4

*Sachs v. Weinstein*, 208 A.D. 360, 203 N.Y.S. 449 (1st Dep't 1924) ............... 17

*Strumpf v. Asdourian,* 2006 N.Y. Misc. LEXIS 3976 (Dec. 12, 2006) .............. 16, 20

*Wilhelmina v. Models v. Fleisher,* 19 A.D.3d 267, 270, 797 N.Y.S.2d 83, 85
(1st Dept. 2005)........................................................................... 20

*Willard v. Holmes, Booth & Haydens*, 142 N.Y. 492, 37 N.E. 480 (1894) .......... 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                         :

ANDREW C. SANKIN,                 :

                Plaintiff,      :
      - v. -
                       :     07 CV 10491 (CLB)(LMS)
MARK ABESHOUSE and
RHONDA LEONARD,          :

             Defendants.    :

                         :
------------------------------------------------------------x

# MEMORANDUM OF LAW OF RHONDA LEONARD
# IN SUPPORT OF HER MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

Defendant Rhonda Leonard ("Leonard"), by her undersigned attorney, hereby

respectfully files this memorandum of law in support of her motion to dismiss the complaint filed

against her by plaintiff Andrew C. Sankin ("Sankin") pursuant to Federal Rule of Civil Procedure

12(b)(6), and for such other and further relief as this Court deems just and appropriate.

Sankin has asserted one malicious prosecution claim against Leonard and her

husband, co-defendant Mark Abeshouse ("Abeshouse"). Sankin's malicious prosecution action

arises out of a prior National Association of Securities Dealers ("NASD") arbitration ("NASD

Proceeding") commenced against him by Augustus Capital LLC ("Augustus"). For several

independently sufficient reasons, Sankin's malicious prosecution claim should be dismissed

against Leonard with prejudice. Amending the complaint will not save Sankin's claim from the

deficiencies cited herein because the relevant underlying circumstances would not change from pleading to amended pleading and because the facts needed to properly plead all of the elements of a malicious prosecution claim simply do not exist in this case.

First, Sankin's allegation that "the claims against Sankin in the NASD arbitration lacked probable cause" was previously and strenuously argued in the NASD Proceeding in connection with Sankin's argument that the arbitration was frivolous, i.e., lacked probable cause, and that Sankin therefore should be awarded attorneys' fees pursuant to New York Uniform Rule § 1301.1. The NASD panel rejected Sankin's request for attorneys' fees. Accordingly, after having a full and fair opportunity to argue the point before the panel, Sankin has lost the argument that the NASD Proceeding was "frivolous" and is now collaterally estopped from again alleging in this action that Augustus lacked probable cause for commencing such an action. In addition, Sankin fails to sufficiently plead the element that the prior proceeding completely lacked probable cause.

Second, Sankin has failed to properly allege special damages resulting from the commencement of the NASD Proceeding which is a required element given that the prior proceeding was a civil action. New York courts have defined special damages as constituting substantial injury or interference with the plaintiff's person, property or business that entails "some concrete harm that is considerably more cumbersome than the physical, psychological, or financial demands of defending a lawsuit." *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 205, 689 N.Y.S.2d 411, 711 N.E.2d 626 (1999). Sankin's vague allegations that he "was forced to incur substantial costs, fees and disbursements" in defending himself in the NASD Proceeding, that his recovery from cancer was "adversely affected," and that his "relationship" with Joseph Edelman

2

was somehow damaged are inadequate to establish special damages under New York law.  To

plead a case for malicious prosecution, Sankin, at a minimum, must allege "a highly substantial

and identifiable interference with person, property or business."  *Id.*  Because he has failed to do

so, his case must be dismissed.  Indeed, Sankin's allegations concerning his damages are pleaded

so broadly that Leonard is not even afforded sufficient information to defend herself, providing

yet another and related reason for the dismissal of Sankin's complaint at this juncture with regard

to the special damages requirement.

   Third, the NASD Proceeding was initiated by Augustus, the sole claimant in that

action.  As a NASD broker-dealer, Augustus is a highly regulated entity with a separate corporate

existence.  Leonard did not initiate the NASD Proceeding in her individual capacity and was not

a party to the NASD Proceeding in her individual capacity.  Moreover, the factual allegations

contained in the complaint are not sufficient to pierce the corporate veil against any individual

including Leonard even if Leonard could somehow be subject to such piercing.  Accordingly,

Sankin has failed to satisfy even the first element of a claim for malicious prosecution that the

prior action was initiated by Leonard.

   Fourth, Sankin does not sufficiently allege that Leonard was motivated by malice

in connection with the commencement of the arbitration proceeding.  He should also otherwise

be collaterally estopped from arguing this point since he failed to persuade the NASD panel that

the proceeding was maliciously instituted in connection with his argument that he should be

awarded attorneys' fees and costs.

   Fifth and finally, although the issue has not been directly addressed in this forum,

New York courts would likely hold that the NASD Proceeding does not support a malicious

3

prosecution action because the arbitration proceeding was intended to be a final and complete

forum with regard to the resolution of the disputes between the parties. For the reasons discussed

herein, Leonard respectfully requests that her motion to dismiss be granted.

## STATEMENT OF RELEVANT PROCEDURAL HISTORY AND FACTS

### I. Relevant Procedural History

#### A. The NASD Arbitration Proceeding

Augustus commenced the NASD proceeding against Sankin on May 13, 2005

with the filing of a statement of claim seeking damages for breach of contract. Sankin answered

the statement of claim on September 16, 2005, asserted a counterclaim for defamation, and

requested unspecified damages against Augustus for defamation, expungement, attorneys' fees

and costs. The arbitration was tried on April 9-11, 2007 and June 12-14, 2007.[1] (Exh. A).[2]

In his post-hearing brief, Sankin argued for the imposition of attorneys fees:

> "We believe the Panel also possesses the authority to award attorneys' fees
> because Claimant has engaged in frivolous conduct. New York Rules of
> Court § 130-1.1(a)-(c) provides that such fees may be awarded if the adversary
> engages in frivolous conduct. These Rules define a frivolous action as one
> that (1) is completely without merit in law and cannot be supported by a
> reasonable argument for an extension, modification or reversal of existing
> law; (2) is undertaken primarily to delay or prolong the resolution of the

---

[1] On the first day of the arbitration, Sankin withdrew his claim for defamation in light of the New York Court of Appeal's decision in *Rosenberg v. Metlife, Inc.*, 8 N.Y.3d 359, 834 N.Y.S.2d 494, 866 N.E.2d 439 (2007) (holding that statements contained in a NASD employee termination notice (form U-5) were subject to an absolute privilege in a suit for defamation).

[2] References herein to exhibits are to the following exhibits attached to the declaration of Charles A. Stewart, III annexed to the motion to dismiss papers filed on January 11, 2008 on behalf of defendant Mark Abeshouse: Exhibit A, NASD Proceeding Award; Exhibit B, Sankin's Post-Hearing Arbitration Brief; Exhibit C, Augustus' Post-Hearing Brief; Exhibit D, Notice of Entry of the NASD Proceeding Award; and Exhibit E, Sankin's state complaint that has been removed to this Court.

4

litigation, or to harass or maliciously injure another; or (3) asserts material factual statements that are false. As stated in the summation, we believe that Augustus' claims are completely without merit, vindictive, malicious, and, above all, frivolous. Should Mr. Sankin prevail, he is entitled to legal fees and expenses."

(Exh. B at 11).

In its post-hearing brief, Augustus argued that neither Augustus nor Sankin had carried the burden of demonstrating that the other side litigated the NASD Proceeding in bad faith, vexatiously, wantonly, or for oppressive reasons. (Exh. C at 9) (citing *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1064 (9th Cir. 1991) (recognizing bad faith exception and finding that arbitrator may award attorneys' fees when "the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons"); *Interchem Asia 2000 PTE Ltd. v. Ocean Petrochemicals AG*, 373 F. Supp. 2d 340, 355 (S.D.N.Y. 2005) (same)).

On July 26, 2007, the arbitration panel rendered its award pursuant to Rule 10330 of the NASD Code of Arbitration. The arbitration panel denied both Augustus' contract and quasi-contract claims and Sankin's request for attorneys' fees, and recommended, but did not order, the expungement of Sankin's U-5. In its entirety, the Award stated:

> "After considering the pleadings, the testimony and evidence presented at the hearing, and the post-hearing submissions, <u>the Panel has decided in full and final resolution of the issues submitted for determination</u> as follows:

1. Claimant's claims are denied in their entirety.

2. The Panel recommends the expungement of Respondent Andrew Sankin's U5 filed by Claimant Augustus Capital on August 6, 2004. The Panel recommends that the Reason for Termination section should be expunged and that the Reason for Termination be changed to voluntary. The Panel's recommendation is based upon the defamatory nature of the information.

3.    <u>Any and all relief not specifically addressed herein is denied.</u>"

(Exh. A) (emphasis added).[3]

Subsequently, Sankin entered and docketed the NASD Award in the Supreme Court of

the State of New York, County of New York. (Exh. D).

### B. <u>Sankin's Malicious Prosecution Action Against Abeshouse and Leonard</u>

#### 1. <u>Commencement of State Court Action</u>

On October 12, 2007, Sankin commenced this malicious prosecution action

against Leonard and Abeshouse in the Supreme Court of the State of New York, County of

Westchester. The complaint was filed by Dickstein Shapiro, LLP ("Dickstein"), the same law

firm that represented Sankin in the NASD Proceeding, and it contained specific allegations

reflecting that a lawyer with that firm, Adam Weiss, would be a witness on the element of

Abeshouse's alleged malice against Sankin. (Exh. E,  ¶¶ 34, 39).[4]

#### 2. <u>Removal of State Court Action to this Court</u>

On November 20, 2007, defendants removed the case to this Court pursuant to 28

U.S.C. § 1441 *et seq.* on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332.[5]

---

[3] Sankin's allegation in the complaint that "[t]he NASD Arbitration terminated in favor of Sankin on all counts" (Exh. E, ¶ 38)  is inaccurate because Sankin was unsuccessful with regard to his request for attorneys' fees and expenses and also had to withdraw his defamation counterclaim.

[4] On January 10, 2008, Dickstein moved to be relieved as counsel for Sankin on the basis that one or more Dickstein attorneys would be witnesses. The New York Code of Professional Responsibility, Disciplinary Rule 5-102(a) provides, in relevant part, that "A lawyer shall not act . . . as an advocate on issues of fact before any tribunal if the lawyer knows . . . that the lawyer ought to be called as a witness on a significant issue on behalf of the client." On January 11, 2008, Dickstein's motion was granted.

[5] At about the same time as the removal, and with full knowledge that Leonard was represented by the undersigned, Sankin filed, without any prior notice to the undersigned, a since

### 3. Stipulation and Order

On November 30, 2007, a stipulation and order was filed providing for the filing of these motion papers by January 11, 2008, opposition papers by February 11, 2008, and replies by February 25, 2008. The return date of this motion is March 7, 2008.

## II. Relevant Allegations of Sankin's Complaint

### A. Introduction

Sankin makes a number of inadequate allegations against Leonard in support of his malicious prosecution claim. None of these allegations come close to satisfying the exacting standards applicable to sustaining a malicious prosecution claim that arises out of a prior civil proceeding.

### B. Allegations Concerning the Initiation of the Prior Proceeding

Sankin makes two conclusory allegations concerning the initiation of this lawsuit by Leonard. First, Sankin alleges that Augustus "through its sole principal, [Abeshouse] and its attorney [Leonard], maliciously instituted" the NASD Proceeding against Sankin." (Exh. E, ¶2). Second, he similarly alleges that "Augustus through Abeshouse and Leonard instituted the NASD Arbitration against Sankin . . . ." (Exh. E, ¶36). Augustus is alleged to be a "non-party" to this litigation and no additional allegations are made as to why Augustus, the claimant in the prior proceeding, has non-party status in this malicious prosecution proceeding. (Exh. E, ¶11). Sankin pleads no other facts in support of his allegation that Leonard initiated a proceeding that was in fact commenced against Sankin by only Augustus

---

withdrawn and frivolous motion for a default judgment against Leonard in state court even though Leonard's time to respond to the state complaint had not yet run since she had not been actually served personally with a copy of the summons and complaint.

### C. <u>Allegations Concerning Damages</u>

The Complaint seeks damages for "not less than $500,000" and alleges that "Sankin was forced to incur substantial costs, fees, and disbursements in defending against" the NASD Proceeding.  Sankin also alleges that because of the prior action,  his "recovery from cancer was adversely affected" (even though, as discussed below, the same attorney that he had in both the prior and this proceeding has recently represented to the Court that Sankin is free from cancer) and his "relationship with Edelman" was "damaged," and "was a contributing factor in Sankin's removal as an officer of Perceptive Advisors." (Exh. E, ¶40).  Sankin also alleges "the great physical, psychological, and financial toll of defending himself in the NASD Arbitration." (Exh. E. ¶6). Sankin alleges no other specific facts related to the damages he allegedly suffered as a result of the prior NASD Proceeding.

### D. <u>Allegations Concerning Probable Cause</u>

Sankin alleges that the "Defendants knew or should have know that their claims in the NASD Arbitration lacked any basis in fact."  With regard to Leonard, Sankin alleges that she contradicted the claims made in the NASD Proceeding with a purported opinion letter that she had written. (Exh. E. ¶37).  Sankin materially omits from his complaint the fact that he vigorously but unsuccessfully argued the probable cause issue during the NASD Proceeding under the guise of his argument that the proceeding was frivolous and brought in bad faith thereby justifying an award of attorneys' fees and costs.

### E. <u>Allegations Concerning Malice</u>

As to the element of malice, Sankin alleges that "Abeshouse and Leonard exhibited malice toward Sankin, as evidenced by their defamatory statements on Sankin's Form

8

U5, their service of the Statement of Claim one day before Sankin's cancer surgery," as well as

correspondence between Abeshouse and Sankin and a statement that Abeshouse allegedly made

to one of Sankin's attorneys during the NASD Proceeding. (Exh. E. ¶39)

## ARGUMENT

## THE COMPLAINT SHOULD BE DISMISSED

### I. Overview

There are five independent reasons which call for the dismissal of the complaint

against Leonard. Whether considered separately or in combination with one another, these

dismissal grounds demonstrate that Sankin has failed to sufficiently plead a malicious

prosecution claim against Leonard.

### II. Applicable Legal Standards

#### A. Legal Standards Regarding the Adjudication of a Rule 12(b)(6) Motion

When adjudicating a motion to dismiss a claim for failure to state a claim, the

Court must accept as true all factual allegations set forth in the complaint and should draw all

reasonable inferences in favor of the plaintiff. *Patel v. Searles*, 305 F.3d 130, 134-35 (2d Cir.

2002); *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 62 (2d Cir.

1997). The complaint must include sufficient facts to afford the defendant fair notice of the

claims and the grounds upon which they are based and demonstrate a right to relief. *See Bell*

*Atlantic v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). A court must then determine whether the

plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Id.* at

1974. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Id.* at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The "flexible 'plausibility standard'" enunciated in *Twombly* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).  As the United States Supreme Court has recently stated, "when the allegations in a complaint, however true, [cannot] raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic v. Twombly*, 127 S.Ct. at 1969 (internal citations omitted).

In connection with the adjudication of a motion to dismiss, the court is permitted to consider materials outside the complaint itself that plaintiff relied upon in drafting the complaint or that are otherwise integral to allegations made in a complaint if there are no disputes as to the authenticity and relevance of such materials and if the plaintiff had possession, knowledge, and notice of such materials when the action was commenced.  Under these circumstances, the court may do so without converting the motion to dismiss to one for summary judgment. *See, e.g., Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991); *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000).  Application of these pleading standards to the inadequate allegations of Sankin's complaint calls for the dismissal of Sankin's malicious prosecution claim against Leonard.

### B. <u>Legal Standards Applicable to Asserting a Malicious Prosecution Claim</u>

In New York, a properly pleaded claim for malicious prosecution must sufficiently allege four elements: "(1) the initiation of a prior action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that

ends in failure or, in other words, terminates in favor of the plaintiff.." *O'Brien v. Alexander,* 101 F.3d 1479, 1484 (2d Cir. 1996) (citations omitted). If, as here, the prior action was a civil proceeding, the plaintiff must also prove special damages resulting from such action. *Honzawa v. Honzawa,* 268 A.D.2d 327, 701 N.Y.S.2d 411 (1st Dep't 2000); *Campion Funeral Home v. State of New York,* 166 A.D.2d 32, 569 N.Y.S.2d 518 (3d Dep't 1991).

As discussed below, Sankin's complaint falls far short of meeting these requirements, and also relatedly fails to properly include sufficient facts to afford Leonard fair notice of the grounds upon which Sankin's malicious prosecution claim is based.

## III. Discussion

### A. Sankin is Collaterally Estopped From Alleging the Lack of Probable Cause and the Lack of Probable Cause Element is Insufficiently Pleaded

In determining whether a prior civil action was commenced without the requisite probable cause, the issue is whether defendant was aware of facts, actual or apparent, strong enough to "justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of. . . . One may act upon what appears to be true, even if it turns out to be false, provided [one] believes it to be true, and the appearances are sufficient to justify the belief as reasonable." *Levitin v. Miller,* 1994 U.S. Dist. LEXIS 9701 (S.D.N.Y. July 15, 1994) (quoting, *Burt v. Smith,* 181 N.Y. 1, 5, 73 N.E. 495, 496 (1905)). *See also New York State Properties., Inc. v. Clark,* 183 A.D.2d 1003, 1006, 583 N.Y.S.2d 317, 320 (3d Dep't 1992). Moreover, the plaintiff must establish that there was no probable cause for <u>any</u> claim asserted in the underlying civil action and that there was a complete absence of probable cause as to any asserted claim. *Perryman v. Village of Saranac Lake,* 41 A.D.3d 1080, 1081, 839 N.Y.S.2d 290,

292 (3d Dep't 2007) (when the prior proceeding is civil in nature, "the want of probable cause must be patent.") (citations omitted); *Engel v.* CBS, 93 N.Y.2d 195, 204, 711 N.E.2d 626, 631, 689 N.Y.S.2d 411, 417 (1999) (to sustain a malicious prosecution following a civil proceeding, there must be a showing of "an entire lack of probable cause in the prior proceeding").

Although termination of the underlying case in plaintiff's favor is a necessary element of a claim for malicious prosecution, by itself it is not sufficient to prove lack of probable cause. *Marion Steel Co. v. Alderton Dock Yards, Ltd.,* 223 A.D. 741, 227 N.Y.S. 678, 680 (1928). In an action for malicious prosecution, "the propriety of defendants' conduct ... is to be decided by the facts as they appeared to be at the time the prosecution was instituted." *Levy's Store, Inc. v. Endicott Johnson Corp.,* 272 N.Y. 155, 161, 5 N.E.2d 74 (N.Y. 1936) (citing *Rawson v. Leggett,* 184 N.Y. 504, 511, 77 N.E. 662 (1906)).

The issue of whether the underlying action was commenced in bad faith, and therefore lacked probable cause, was fully and vigorously litigated in the NASD Proceeding. In the NASD Proceeding, as demonstrated above, Sankin argued he should be awarded attorneys fees on the ground that the NASD Proceeding was "frivolous." Among other things, Sankin stated that he was entitled to attorneys' fees under Uniform Rule § 130-1.1(a)-(c), arguing in his post-arbitration brief: "As stated in summation, we believe that Augustus's claims are completely without merit, vindictive, malicious, and, above all, frivolous." (Exh. B at 11). In this case, Sankin asserts that these same attorneys' fees constitute an important component of his damages. (Exh. E ¶ 40) ("Sankin was forced to incur substantial costs, fees, and disbursements in defending against Defendants' vindictive pursuit of a frivolous arbitration").

In the arbitration, Augustus opposed Sankin's request for attorney's fees stating in

12

its closing brief:

> "Sankin's position that Augustus' claims are frivolous is completely without
> merit.  Sankin's paperwork production on revenue attribution/sharing, sent
> monthly to Augustus, memorializes the incontrovertible fact that the parties
> had an agreement respecting the Marketing Fee.  Sankin himself wrote
> emails confirming that the broker-dealer component was "an essential" part
> of the parties' understanding.  Elliot Weissbluth [Augustus' expert on hedge
> fund fees] testified that registered representatives often pay a flat percentage
> of their compensation to the broker-dealer.  He specifically testified about
> requiring his extremely qualified registered representatives to pay the broker
> dealer a fee of 15% of the gross revenue.  George Mazin [Sankin's expert on
> hedge fund fees] testified that he had not heard of a case where a registered
> representative generating millions of dollars through his broker-dealer would
> not pay the broker-dealer a cent – a potential result if the terms of the
> Agreement were the ones suggested by Sankin in this proceeding.   Steve
> Guzik, the accountant from Eisner [another Sankin expert], conceded that
> conservative accounting practices do not require an accountant to record
> deferred income that is contingent on a future event and that, ultimately,
> how income is recorded is left to the judgment of the accountant.  Sankin
> testified that he is litigating against Perceptive and arguing that he is entitled
> to be paid a percentage of Net Assets under management for as long as
> Perceptive has assets – a compensation structure vastly broader in scope
> than his Marketing Fee agreement with Augustus (but philosophically
> identical to Augustus' Marketing Fee argument against him).  Also, Sankin
> conceded in an email that he did not ascribe "bad motives" to Abeshouse,
> and also admitted that, at a minimum, the parties had a disagreement as to
> whether commissions would continue to be paid to Augustus if Sankin
> changed broker-dealers. [reference omitted].  Regardless of the outcome,
> there is no support for determining that either party litigated this case in bad
> faith."

(Exh. C at 9-10).

Under NASD Code of Arbitration § 10330(b), "[u]nless the applicable law directs

otherwise, all awards rendered pursuant to this Code shall be deemed final and not subject to

review or appeal." (emphasis added).   The arbitration panel, in the decision Sankin subsequently

docketed in the Supreme Court of the State of New York, County of New York (Exh. D), after

being squarely presented with Sankin's argument that the NASD Proceeding was frivolous under

Uniform Rule § 130.1, denied Sankin's request for an award of attorneys' fees. The arbitration panel described its decision as being a "full and final resolution of the issues submitted for determination." (Exh. A).

Accordingly, Sankin is collaterally estopped from continuing to argue, as he did in the NASD Proceeding, that there was no probable cause for Augustus to commence the NASD Proceeding. *See Loftus v. Arthus,* 2007 N.Y. Misc. LEXIS 5874 (Sup. Ct. July 16, 2007) (citing New York collateral estoppel cases and holding that malicious prosecution claim should be dismissed because plaintiff had failed to demonstrate probable cause where it previously had made a motion for sanctions under Uniform Rule § 130.1 that was denied).

Alternatively, Sankin also fails to sufficiently allege the complete absence of probable cause with regard to the prior proceeding. In his complaint, Sankin alleges, in conclusory fashion, "that the claims made against Sankin in the NASD Arbitration lacked probable cause" (Exh. E. ¶3) and that the NASD Arbitration "lacked any basis in fact." In support of these broad assertions, Sankin alleges that both Leonard and Abeshouse made statements at the arbitration which were contradicted by certain prior statements. (Exh. E. ¶37). However, he does not allege sufficient and specific facts to support his conclusory allegations relating to the probable cause issue and which would detail how the prior proceeding entirely lacked probable cause. The all too common existence of prior inconsistent statements in a particular action, without much more alleged, does not satisfy Sankin's burden to show that the lack of probable cause in the prior proceeding was "patent," *Perryman v. Village of Saranac Lake,* 41 A.D.3d at 1081, 839 N.Y.S.2d at 292, and that there was "an entire lack of probable cause present in the prior proceeding." *Engel v.* CBS, 93 N.Y.2d at 204, 711 N.E.2d at 631, 689

14

N.Y.S.2d at 417 (1999).  Consequently, Sankin's pleading insufficiency as to the probable cause element also supports the dismissal of the complaint against Leonard.

## B. **Sankin Has Failed to Sufficiently Allege Special Damages**

New York law requires that the plaintiff in a malicious prosecution action plead special damages when the underlying action is a civil proceeding.  New York courts have defined special damages to be a substantial injury or interference with the plaintiff's person, property or business that entails "some concrete harm that is considerably more cumbersome than the physical, psychological, or financial demands of defending a lawsuit." *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 205, 711 N.E.2d 626, 631, 689 N.Y.S.2d 411, 417 (1999).  As the court in *Engel* noted:

> "[M]alicious prosecution claims are not encouraged, and thus, without a clear and satisfactory showing that plaintiffs in the previous action lacked reasonable grounds, the case would be dismissed. . . . To hold otherwise would mean that malicious prosecution cases could be maintained for the unsuccessful prosecution of many of the actions which come upon appeal to this court, and a large proportion of unsuccessful actions could be followed by such an action, and litigation be thus interminably prolonged."

93 N.Y.2d at 202 (citations omitted).

Special damages must exceed "the damages normally attendant upon being sued." *Honzawa*, 268 A.D.2d at 329; *see also Campion Funeral Home*, 569 N.Y.S.2d at 521.  Thus, damages in the form of attorneys' fees, legal expenses, harm to reputation, and emotional distress incidental or related to the defense of a litigation are not considered "special damages" under New York law.[6]  In *Engel*, the Court of Appeals held that New York law imposes a requirement

---

[6] The case of  *Thryoff v. Nationwide Mut. Ins. Co.,* 2006 U.S. Dist. LEXIS 71706 (W.D.N.Y. 2006), in which the Court found that allegations of severe emotional harm requiring psychological counseling and medication constituted a special injury, is inapposite to this case

15

that the plaintiff in a malicious prosecution action demonstrate "a highly substantial and identifiable interference with person, property or business." 93 N.Y.2d at 205.

The types of "damages" that have been considered sufficient by New York courts to constitute "special injury" include some type of substantial "interference with . . . person or property," *Willard v. Holmes, Booth & Haydens*, 142 N.Y. 492, 495, 37 N.E. 480 (1894), "such as arrest, attachment, or injunction." *Kalso Systemet, Inc. v. Jacobs*, 474 F. Supp. 666, 670 (S.D.N.Y. 1979) (citations omitted). *See Reade v. Halpin*, 193 A.D. 566, 184 N.Y.S. 438 (3d Dep't 1920) (involuntary commitment). Thus, New York courts have found special damages in cases where the plaintiff alleges with particularity the loss of specific business and income as a result of the filing of the underlying action. *See, e.g., Dudick v. Gulyas*, 277 A.D.2d 686, 688, 716 N.Y.S.2d 407, 410 (3rd Dep't 2000) (chiropractor's loss of business was special injury resulting from disciplinary action brought by defendant); *Willard v. Holmes, Booth and Haydens*, 142 N.Y. 492, 37 N.E. 480 (attachment of property); *Strumpf v. Asdourian*, 2006 N.Y. Misc. LEXIS 3976 (Dec. 12, 2006) (substantial hike in malpractice rates and loss of clients); *First Merchant Bank OSH, Ltd. v. Village Roadshow Pictures (USA) Inc.*, 2002 U.S. Dist. LEXIS 11769 (S.D.N.Y. June 28, 2002) (wrongful attachment of bank account); *Groat v. Town Board of Glenville*, 73 A.D.2d 426, 429-30, 426 N.Y.S.2d 339, 341 (3d Dep't 1980) (police officer suspended without pay, dismissed from the force, disgraced in the department and in the community after charges of misconduct lodged against him).

In the absence of an allegation that the person or property of the party seeking to bring a claim of malicious prosecution has been "interfered with by some incidental remedy, such

---

because Sankin makes no such similar damage claim in his complaint.

16

as arrest, attachment or injunction," *Sachs v. Weinstein*, 208 A.D. 360, 366, 203 N.Y.S. 449, 453 (1st Dep't 1924) (citation omitted), or that the party lost specific, identifiable business and income, New York courts routinely have dismissed malicious prosecution claims.  *See Engel,* 689 N.Y.S.2d at 417-18; *see also  Molinoff v. Sassower*, 99 A.D.2d 528, 528-29, 471 N.Y.S.2d 312, 313-14 (2d Dep't 1984) (dismissal of malicious prosecution claim upheld upon failing to allege sufficient interference with person or property)*; Howard v. City of New York,* 294 A.D.2d 184, 741 N.Y.S.2d 687 (1st Dep't 2002) (plaintiff, a correction officer, who previously had faced charges and specification as a result of false allegations that she had appeared in a pornographic video, failed to allege special injury); *Campion Funeral,* 569 N.Y.S.2d at 521 (dismissal of malicious prosecution claim upheld upon failing to allege special damages and holding that legal expenses incurred in defending a prior action and injury to reputation do not constitute special damages); *Kaslof v. Global Health Alternatives, Inc.,* 2000 U.S. Dist. LEXIS 21053 (E.D.N.Y. June 29, 2000) (dismissing malicious prosecution claim where "plaintiffs have failed to allege any special injury as a result of the filing of the prior action.  They simply seek compensatory and punitive damages plus costs and attorneys' fees"), adopted, 2001 U.S. Dist. LEXIS 2612 (E.D.N.Y. Feb. 13, 2002); *Tedeschi v. Smith Barney,* 548 F. Supp. 1172, 1172 (S.D.N.Y. 1982) (Weinfeld, J.) (dismissing malicious prosecution claim for failing to allege interference with person or property by way of a court-issued provisional remedy such as attachment, an order of arrest, or an injunction) (this holding has been modified "incrementally" by *Engel*: "To the extent that ["a verifiable burden substantially equivalent to the provisional remedy effect can amount to a special injury"] represents a departure from the case law, it is only a minor one, an incremental

17

step in the right direction."*Engel,* 689 N.Y.S.2d at 417-18) .[7]

In *Engel,* the Court of Appeals held that the plaintiff's allegations of injury did not rise to the level of a "special injury." In *Engel,* a lawyer representing a client, Donald Thomas Scholz, in an action against CBS, Inc., was thereafter sued by CBS, along with Scholz, in a second action. According to the deposition testimony of its then president, "CBS instituted the action against Engel, at least in part, to dissuade Engel from representing Scholz." 93 N.Y.2d at 199. Engel alleged that, after CBS commenced the lawsuit against him:

> "Rendering effective legal services to Scholz became more onerous and responding to discovery requests more burdensome, and that he had to absorb the costs himself. He further alleges that a least one potential client among possible others were dissuaded from hiring him, and in a general way, that he suffered emotional and financial damage."

*Id.,* at 200.

In reviewing these facts, the Court of Appeals stated:

> "The claims in the facts presented to us of lost business likewise fail to muster the requisite special injury. These claims are actually tangential to the main claims of an increased work burden due to the conflicts, and are primarily asserted in general rather than specific terms. Even though we can foresee specific, verifiable loss of business providing the necessary grievance, the loss of one client along with vague allegations of reputational loss, given Engel's established practice, are not sufficient. Moreover, there has been no allegation that the consequences, in terms of lost business, have marred, in any specific and meaningful way, Engel's or his law firm's financial opportunities."

---

[7] In a followup decision, Judge Weinfeld granted the defendants' motion for sanctions against the plaintiff's attorney who had also represented the plaintiff during the prior arbitration since "[h]e knew, by reason of his representation of [plaintiff] in the arbitration, all the facts upon which the claims in this action were advanced and must have known the claims were groundless." *Tedeschi v. Smith Barney,* 579 F.Supp. 657, 661 (S.D.N.Y. 1984), *aff'd,* 757 F.2d 465, 466 (2d Cir. 1985)(approving Judge Weinfeld's assessment of sanctions against the attorney and further sanctioning the attorney for taking a frivolous appeal), *cert. denied, Chapman v. Smith Barney,* 474 U.S. 850 (1985).

*Id.,* at 206-07.

Similarly, Sankin's vague allegations here that (1) he had to expend significant sums of money defending himself in the prior proceeding, (2) his "recovery from cancer was adversely affected" (especially in light of his attorney's recent statement to the Court that Sankin was free of cancer),[8] and (3) "Defendants' malicious prosecution damaged Sankin's relationship with Joseph Edelman and was a contributing factor in Sankin's removal as an officer of Perceptive Advisors" do not constitute the "highly substantial and identifiable interference with person, property or business" required by New York law to constitute special injury for a malicious prosecution claim. Indeed, Sankin does not allege that the NASD Proceeding was <u>the reason</u> that Sankin was removed as an officer of Perceptive (as opposed to reasons unrelated to the arbitration), or that such removal has actually caused Sankin financial harm.

Moreover, Sankin's allegations regarding the "adverse affects" that the NASD Proceeding supposedly had on his cancer recovery, or the manner in which his relationship with Joseph Edelman was allegedly somehow damaged do not include sufficient facts to afford defendants fair notice of the grounds upon which Sankin's claims are based. Indeed, he does not allege any specific facts regarding these alleged components of his damages. *Bell Atlantic v. Twombly*, 127 S. Ct. at 1964-65; *Iqbal v. Hasty*, 490 F.3d at 157-58 (2d Cir. 2007). Accordingly, the complaint should be dismissed.

### C. <u>Leonard Did Not Initiate the Prior Proceeding</u>

The first element of a malicious prosecution claim requires that the plaintiff

---

[8] Sankin's attorney has informed the Court that Mr. Sankin is "free from cancer." *See* January 8, 2008 letter from Ira Lee Sorkin to the Honorable Charles L. Brieant.

demonstrate that the defendant commenced the underlying action. For example, in *Strumpf v. Asdourian,* 2006 N.Y. Misc. LEXIS 3976 (Dec. 12, 2006), the court dismissed a malicious prosecution claim against the controlling shareholder of the company that commenced the underlying action on the ground that the controlling shareholder was not a party to the underlying action in his individual capacity. The court noted that the complaint did not set forth sufficient facts to pierce the corporate veil.

In this case, Sankin makes the conclusory allegation that "Augustus through Abeshouse and Leonard instituted the NASD Arbitration against Sankin . . . ." (Exh. E ¶36) but does not allege any specific facts to adequately support an allegation that Leonard in her individual capacity actually initiated the prior proceeding or was a party to the prior proceeding as opposed to the actual plaintiff in that case, Augustus. Leonard was not a party to the NASD Proceeding and is not otherwise alleged to be a party by Sankin. Accordingly, as in *Strumpf,* Sankin's malicious prosecution claims against Leonard should be dismissed because there are no or insufficient allegations in the complaint that (1) Leonard was a party in the prior proceeding in her individual capacity, (2) Leonard initiated the prior proceeding in her individual capacity, and (3) Augustus' corporate veil should be or even can be pierced as to Leonard.

### D. Sankin Has Failed To Sufficiently Allege Malice Against Leonard

Sankin is required to sufficiently plead that the prior proceeding was commenced with malice. *O'Brien v. Alexander*, 101 F.3d at 1484. "An action brought with actual malice is one brought with 'conscious falsity.'" *Wilhelmina Models v. Fleisher*, 19 A.D.3d 267, 270, 797 N.Y.S.2d 83, 85 (1st Dep't 2005) (citing *Hornstein v. Wolf,* 109 A.D.2d 129, 133, 491 N.Y.S.2d 183, 187 (2d Dept. 1985) (defining malice as acting with "conscious falsity" and holding that

malicious prosecution claim should have been dismissed for failing to allege with sufficient particularity this element); *see also Engel v. CBS*, 93 N.Y.2d at 204, 711 N.E.2d at 631, 689 N.Y.S.2d at 417 (malice is "a purpose other than the adjudication of a claim.")

In this case, Sankin does not sufficiently allege that the prior proceeding was begun by Leonard with malice or conscious falsity or for a purpose other than the adjudication of a claim. Sankin alleges that Leonard, with Abeshouse, "exhibited malice toward Sankin, as evidenced by their defamatory statements on Sankin's Form U5, [and] their service of the Statement of Claim one day before Sankin's cancer surgery." Sankin then makes additional allegations in support of the malice element that appear to relate solely to Abeshouse including the 2004 correspondence between Abeshouse and Sankin relating to Abeshouse's displeasure with an agreement and Abeshouse's alleged statement to one of Sankin's attorneys at the arbitration. (Exh. E ¶(39). Sankin also alleges that "Defendants knew or should have known that their claims in the NASD Arbitration lacked any basis in fact." (Exh. E. ¶37).

These allegations involving Leonard do not come close to satisfying applicable pleading standards for alleging that the prior proceeding was commenced with malice. The Form U5 was filed on August 6, 2004 within one month after Sankin's resignation from Augustus on July 8, 2004. (Exh A; Exh. E. ¶23). The NASD Proceeding was initiated on May 10, 2005, more than eight months after the filing of the U5 Form. (Exh E ¶36). The alleged defamatory statements on Sankin's U5 simply cannot constitute the requisite showing that the NASD Proceeding was later initiated with malice given the passage of time between the two events and the absence of any alleged and actual link between the U5 Form and the later filing of an action. Similarly, Sankin's baseless speculation that the timing of the service of the statement of claim

21

constitutes malice should also be rejected because such an otherwise proper act of service of process, in the absence of any actual facts indicating malicious intent, simply does not satisfy the applicable standard for alleging that the proceeding was begun with malice or "conscious falsity."

Furthermore, Sankin does not even allege that these alleged acts played any role in the initiation of the prior action. Sankin merely alleges that Leonard "exhibited" malice in connection with the service of the statement of claim and the alleged false statements in the Form U5 but does not link such alleged facts with the actual initiation of the proceeding itself. Sankin's conclusory allegation that the defendants "knew or should have known that their claims . . . lacked any basis in fact" also is insufficient with regard to alleging "conscious falsity" a concept which carries with it a higher level of awareness of more serious wrongdoing than is otherwise present in the allegations of Sankin's complaint.

Finally, as is the case with regard to the probable cause argument discussed above, Sankin should also be collaterally estopped from arguing the malice issue because of his unsuccessful request for attorneys' fees in the proceeding below which was based on his argument that "Augustus' claims are completely without merit, vindictive, malicious, and above all frivolous." (Exh. B at 11) (emphasis added).

### E. Malicious Prosecution Claim Should Not Arise From a Prior Arbitration

In *Brennan v. Tremco, Inc.*, 25 Cal. 4th 310, 105 Cal. Rptr. 2d 790, 20 P.3d 1086, 1088 (Cal. 2001), the California Supreme Court dismissed a malicious prosecution action based on an underlying civil arbitration proceeding. The *Brennan* court held that "whether the underlying action started in court or in arbitration, if it ends in contractual arbitration, that

22

termination will not support a malicious prosecution action." *Id.* The *Brennan* court offered two

rationales for its holding: (1) preventing an "'unending roundelay of litigation'" by not

expanding derivative tort litigation; and (2) encouraging parties to choose binding arbitration "to

end the entire dispute." *Id.* The *Brennan* court stated in relevant part:

> "The growing antipathy for litigation spawning litigation, together with the
> recognition that the parties who voluntarily choose arbitration generally expect
> and desire that the arbitration will end their dispute, convinces us that arbitration
> should not be the basis for future malicious prosecution claims."

Id., at 1089. *See also Hakakha v. Peregrine Fin. & Sec. Inc.*, 177 Fed. Appx. 587 (9th Cir.

2006) (following *Brennan* and affirming dismissal, with prejudice, of malicious prosecution

claim based on civil arbitration proceeding).

Although New York courts have not directly addressed the issue of whether a civil

arbitration proceeding can be the basis for a future malicious prosecution action, the Court of

Appeals would likely follow the reasoning of the *Brennan* court and dismiss a case, like this one,

based on a civil arbitration proceeding. The New York Court of Appeals, like the California

Supreme Court in *Brennan,* has emphasized that the better remedy for excessive litigation is to

apply sanctions, not expand opportunities for initiating one or more rounds of malicious

prosecution litigation after the first action has been concluded. *Compare Engel,* 93 N.Y. at 202-

03 (noting that malicious prosecution claims are not encouraged and emphasizing that sanctions

are available for frivolous conduct) with *Brennan,* 20 P. 3d at 1088-89 (same). As the Court of

Appeals stated in *Engel:*

> "Financial burdens resulting from frivolous cases can, in some measure, be
> assuaged by awarding fees and costs as authorized by rules and statute. In
> addition, we cannot ignore the strong possibility that absent the additional
> hurdle of an added grievance, successful defendants, seeking additional

23

vindication for the burdens imposed by the prior litigation, will claim malicious prosecution, and, if unsuccessful in that claim, their opponents will be all too willing to return the favor."

93 N.Y.2d at 204.

The *Brennan* court also found that, to permit a malicious prosecution action to be based on arbitration, would defeat the purpose of arbitration to be an expeditious and informal means of resolving disputes.  The *Brennan* court stated:

"[T]he nature of private arbitration does not always allow for a ready determination of whether or why the prior action actually terminated in the malicious prosecution plaintiff's favor ... [A]n arbitrator need not explain the basis of an award.  The arbitrator's decision is also generally non-reviewable."

20 P. 3d at 1090.

New York courts similarly have an important  public policy of strongly encouraging arbitration.  *See Hackett v. Milbank, Tweed, Hedley & McCloy,* 86 N.Y.2d 146, 630 N.Y.S.2d 274, 654 N.E.2d 95 (1995).   If presented with the issue, the New York Court of Appeals would likely hold that New York law prohibits basing a malicious prosecution claim on a civil arbitration proceeding, an additional ground upon which to grant Leonard's motion to dismiss the complaint against her.

## CONCLUSION

Accordingly, defendant Rhonda Leonard respectfully requests (1) the dismissal of the complaint with prejudice, since any amended pleading will not be able to cure the deficiences

of the complaint as detailed herein, and (2) such other and further relief as the Court deems just

and appropriate including an award of her reasonable attorneys' fees and costs.

Dated: January 11, 2008
     New York, New York

                             Respectfully submitted,

                             LAW OFFICE OF
                             RICHARD E. SIGNORELLI

By:

                             Richard E. Signorelli (RS-7976)
                             799 Broadway, Suite 539
                             New York, NY 10003
                             Telephone:    212 254 4218
                             Facsimile:    212 254 1396
                             rsignorelli@nycLITIGATOR.com[SM]
                             www.nycLITIGATOR.com[SM]

                             Attorneys for Defendant
                             Rhonda Leonard

Filing and Service via ECF
Courtesy Copies via Fedex

25