Steven W. Gold (SG-3959)
Terence W. McCormick (TM-2713)
MINTZ & GOLD LLP
470 Park Avenue South
10th Floor North
New York, New York 10016-6819
(212) 696-4848
(212) 696-1231
gold@mintzandgold.com
mccormick@mintzandgold.com

*Attorneys for Plaintiff*
*Andrew C. Sankin*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
ANDREW C. SANKIN,                                       :
                                                        :
                                    Plaintiff,          :
                                                        :          **7:07-cv-10491 (CLB)(MDF)**
           -against-                                    :
                                                        :            <u>**ECF CASE**</u>
MARK ABESHOUSE and                                      :
RHONDA LEONARD,                                         :
                                                        :
                                    Defendants.         :
-----------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**THE MOTIONS OF DEFENDANTS MARK ABESHOUSE AND**
<u>**RHONDA LEONARD TO DISMISS THE COMPLAINT**</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

FACTS ...................................................................................................................... 3

ARGUMENT ............................................................................................................. 9

A.   Standards for Dismissal Under Rule 12(b)(6) ...................................................9

B.   Elements of Malicious Prosecution Under New York Law............................... 10

C.   The Complaint More than Sufficiently Alleges the Commencement of an
     Actionable Legal Proceeding ............................................................................ 11

D.   The Complaint Sufficiently Alleges Actionable Misconduct by
     These Individual Defendants ............................................................................ 13

E.   Sankin's Complaint Sufficiently Alleges that Defendant Leonard
     Acted With Malice ............................................................................................. 15

F.   Sankin's Complaint Amply Alleges Special Injury in the Form of
     A Substantial Interference with Sankin's Business and His Person ................. 16

     1.   Defendants' Malicious Institution of the NASD Arbitration
          Constituted a Grievous Interference with Sankin's Career ................... 17

     2.   By Pressing the Arbitration Against a Cancer Patient, Defendants
          Inflicted Yet Another Special Injury Recognized by New York Courts ............ 19

G.   Sankin Is Not Collaterally Estopped from Asserting That the Arbitration Lacked
     Probable Cause ................................................................................................. 19

CONCLUSION ......................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                                     **<u>Page</u>**

<u>Anza v. Ideal Steel Supply Corp.</u>,
    547 U.S. 451, 126 S. Ct. 1991 (2006)................................................................................ 9

<u>Baker v. Cuomo</u>, 58 F.3d 814 (2d Cir. 2003),
    <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u>
    <u>Baker v. Pataki</u>, 85 F.3d 919 (2d Cir. 1996)(en banc) ......................................................10

<u>BBS Norwalk One, Inc. v. Raccolta, Inc.</u>,
    117 F.3d 674 (2d Cir. 1997)..............................................................................................19

<u>Bear Stearns & Co., Inc. et al. v. 1109580 Ontario Inc.</u>,
    409 F.3d 87 (2d Cir. 2005)................................................................................................20

<u>Bell Atlantic Corp. v. Twombly</u>,
    - U.S. - ,127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........................................................... 9

<u>Bervey v. Hotaling</u>,
    88 A.D.2d 735, 451 N.Y.S.2d 863 (3rd Dep't 1982) ........................................................14

<u>Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>,
    910 F.2d 1049, Fed. Sec. L. Rep. ¶95,417 (2d Cir. 1990) ................................................21

<u>Brennan v. Tremoco, Inc.</u>,
    25 Cal. 4th 310, 105 Cal. Rptr. 790, 20 P.3d 1086 (Cal. 2001)..................................11, 12

<u>Burke v. Musarra</u>,
    46 Misc. 2d 933, 261 N.Y.S.2d. 314 (N.Y. Sup. Ct. Erie Co. 1965)................................13

<u>Burt v. Smith</u>,
    181 N.Y. 1, 73 N.E.2d 495 (1905)....................................................................................18

<u>Cantalino v. Danner</u>,
    96 N.Y.2d 391, 729 N.Y.S.2d 405, 754 N.E.2d 164 (2001).............................................10

<u>Chance v. Armstrong</u>,
    143 F.3d 698 (2d Cir. 1998)..............................................................................................10

<u>Clark v. Bear Stearns & Co. Inc.</u>,
    966 F.2d 1318 (9th Cir. 1992) ...........................................................................................20

Cobb v. Pozzi,
    363 F.3d 89 (2d Cir. 2004)........................................................................20

Colon v. Coughlin et al.,
    58 F.3d 865 (2d Cir. 1995)..................................................................20, 22

Dean v. Kochendorfer,
    237 N.Y. 384, 143 N.E.2d 229 (1924)......................................................15

Dudick v. Gulyas,
    277 A.D.2d 686, 716 N.Y.S.2d 407 (3rd Dep't 2000)..............................18

Emery Roth & Sons, P.C. v. M & B Oxford 41, Inc.,
    298 A.D.2d 320, 750 N.Y.S.2d 10 (1st Dep't 2002) .................................21

Engel v. CBS, Inc.,
    93 N.Y.2d 195, 689 N.Y.S.2d 411, 711 N.E.2d 626 (1999)...........11, 16, 17, 19

Fink et al. v. Shawangunk Conservancy, Inc.,
    15 A.D.3d 754, 790 N.Y.S.2d 249 (3rd Dep't 2005) ................................22

Erickson v. Pardus,
    - U.S. - , 127 S. Ct. 2197 (2007) ...........................................................3, 9

Fernandez v. Chertoff,
    471 F.3d 45 (2d Cir. 2006)........................................................................14

Fisher v. Zaks,
    - A.D.3d - , - N.Y.S.2d - , 2008 WL 324354 (1st Dep't Feb. 7, 2008).............17

Ford Motor Credit Co. v. Hickey Ford Sales, Inc.,
    62 N.Y.2d 291, 476 N.Y.S.2d 791, 465 N.E.2d 330 (1984).....................18

Fulton v. Ingalls,
    165 App. Div. 323, 151 N.Y.S. 130 (2nd Dep't 1914),
    aff'd, 214 N.Y. 665, 108 N.E.2d 1094 (1915).........................................18

Gant v. Wallingford Bd. of Educ.,
    69 F.3d 669 (2d Cir. 1995)........................................................................10

Giglio v. Delesparo,
    46 A.D.2d 928, 361 N.Y.S.2d 721 (3rd Dep't 1974)................................15

Glen v. State,
    144 Misc. 2d 101, 543 N.Y.S.2d 632 (N.Y. Ct. Cl. 1989)...................................17

Global Network Communications, Inc. v. City of New York,
    458 F.3d 150 (2d Cir. 2006)..................................................................................10

Groat v. Town Board of Town of Glenville,
    73 A.D.2d 426, 426 N.Y.S.2d 339 (3rd Dep't 1980),
    app. dismissed, 50 N.Y.2d 928 (1980)...............................................11, 17, 18

Grossman v. Laurence Handprints-N.J., Inc.,
    90 A.D.2d 95, 101, 455 N.Y.S.2d 852 (2nd Dep't 1982) ....................................21

Harris v. City of New York,
    186 F.3d 243 (2d Cir. 1999)....................................................................................9

Hicks v City of Buffalo,
    295 A.D.2d 880, 745 N.Y.S.2d 349 (4th Dep't 2002) ........................................15

Krisanda v. Miller,
    205 A.D.2d 1029, 614 N.Y.S.2d 73 (3rd Dep't 1994) ........................................15

Manti v. New York City Transit Auth.,
    165 A.D.2d 373, 568 N.Y.S.2d 16 (1st Dep't 1991) ..........................................11

Martin v. Albany,
    42 N.Y.2d 13, 396 N.Y.S.2d 612, 364 N.E.2d 1304 (1977)................................15

Martinez v. City of Schenectady,
    97 N.Y.2d 78, 735 N.Y.S.2d 868, 761 N.E.2d 560 (2001)..................................10

Matter of Morris v. New York State Dept. of Taxation & Finance,
    82 N.Y.2d 135, 603 N.Y.S.2d 802, 623 N.E.2d 1157 (1993)..............................14

Matza v. Oshman, Helfenstein & Matza,
    33 A.D.3d 493, 823 N.Y.S.2d 47 (1st Dep't 2006) ............................................21

McCall v. Pataki,
    232 F.3d 321 (2d Cir. 2000)....................................................................................9

Miller v. Milligan,
    48 Barb. 30 (N.Y. Sup. Ct. N.Y. Co. 1866)..........................................................13

Mills v. Polar Molecular Corp.,
    12 F.3d 1170 (2d Cir. 1993)....................................................................................9

Nardelli v. Stamberg,
    44 N.Y.2d 500, 406 N.Y.S.2d 443, 377 N.E.2d 975 (1978)........................................... 13

Neely v. First State Bank,
    975 P.2d 435 (Okla. 1998)................................................................................12

Norris v. Grosvenor Mktg. Ltd.,
    803 F.2d 1281 (2d Cir. 1986)........................................................................... 20

Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,
    322 F.3d 147 (2d Cir. 2003)..............................................................................10

O'Neill v. Merrill Lynch, Pierce, Fenner & Smith,
    654 F. Supp. 347 (N.D.Ill. 1987) ......................................................................22

Patane v. Clark,
    508 F.3d 106 (2d Cir. 2007)............................................................................... 9

Patel v. Contemporary Classis of Beverly Hills,
    259 F.3d 123 (2d Cir. 2001)...............................................................................9

PenneComm B.V. v. Merrill Lynch & Co.,
    372 F.3d 488 (2d Cir. 2004)............................................................................. 20

Postlewaite v. McGraw-Hill, Inc.,
    333 F.3d 42 (2d Cir. 2003) .............................................................................. 20

Ramos v. New York,
    285 A.D.2d 284, 729 N.Y.S.2d 678 (1st Dep't 2001) ..................................... 15

Rosa v. City Univ. of N.Y.,
    04 Civ. 9139 (KMW), 2007 WL 1001416 (S.D.N.Y. Apr. 2, 2007)...............................20

Roth v. Jennings,
    489 F.3d 499 (2d Cir. 2007)...............................................................................9

Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,
    748 F.2d 774 (2d Cir. 1984)..............................................................................10

Schierloh v. Kelly,
    253 App. Div. 373, 2 N.Y.S.2d 188 (2nd Dep't 1938) ......................................14

Smith-Hunter v. Harvey,
    95 N.Y.2d 191, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000)..............................................10

Swierkiewicz v. Sorema, N.A.,
    534 U.S. 506 (2002).............................................................................................9

Thyroff v. Nationwide Mut. Ins. Co.,
    05 Civ. 6607, 2006 WL 2827082, *4 (W.D.N.Y. Sept. 29, 2006) ................................. 19

Todd v. Exxon Corp.,
    275 F.3d 191 (2d Cir. 2001)..............................................................................9

Todd Layne Cleaners LLC v. Maloney,
    17 Misc. 3d 1114(A), 2007 WL 3023036 (Civ. Ct. N.Y.C. 2007) ...................................21

Tray Wrap, Inc. v. Pacific Tomato Growers Ltd.,
    18 Misc. 3d 1122(A), 2008 WL 222495, *12 (N.Y. Sup. Ct. Bronx Co. 2008)...............11

Walford v. Blinder, Robinson & Co., Inc.,
    793 P.2d 620 (Col. App. 1990) ...................................................................... 12

Watson v. City of New York,
    57 Misc. 2d 542, 293 N.Y.S.2d 348 (N.Y.C. Civ. Ct. 1968)........................................... 19

Wilhelmina Models, Inc. v. Fleisher,
    19 A.D.3d 267, 797 N.Y.S.2d 83 (1st Dep't 2005) ..........................................................18

York v. Association of the Bar of the City of New York,
    286 F.3d 122 (2d Cir. 2002).............................................................................. 19

## **Statutes**

22 N.Y.C.R.R. § 130.1-1 ...............................................................................20, 21, 22

Fed. R. Civ. P. 11 ...................................................................................................... 21

## **Other Authorities**

NASD Manual Code of Arbitration Procedure ¶10201 ................................................. 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANDREW C. SANKIN,                              :
                                               :
                          Plaintiff,           :
                                               :    **7:07-cv-10491 (CLB)**
        -against-                              :
                                               :
MARK ABESHOUSE and                             :
RHONDA LEONARD,                                :
                                               :
                          Defendants.    :
-------------------------------------------------------------X

## PRELIMINARY STATEMENT

Sankin brought this malicious prosecution action against defendants Mark Abeshouse ("Abeshouse") and Rhonda Leonard ("Leonard") (collectively, "defendants") to recover for the grievous harm he sustained as a result of their prosecution of an arbitration before the NASD that they knew (and the documentary evidence unambiguously showed) was utterly *baseless*. Defendants commenced the arbitration, in the name of Abeshouse's registered broker/dealer, Augustus Capital, LLC ("Augustus"), not to vindicate any rights they honestly believed they or Augustus had, but rather as a manifestation of their own jealousy and greed. The actual purpose of defendants' pursuit of the arbitration was to punish Sankin for refusing to capitulate to persistent pressure from Abeshouse to renegotiate his existing commission arrangement with Abeshouse under terms that were considerably less favorable to Sankin.

Although the arbitration ultimately terminated in Sankin's favor, Sankin suffered serious harm as a direct result of the litigation, specifically, the impairment of his business relationship with a third party and the aggravation of his cancer. Nevertheless, defendants now seek a dismissal of Sankin's action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, leading to a nonsuit even before discovery has been had and Sankin has had the opportunity to present

his story in court.  However, none of their legal claims provides a principled basis for the early termination of this action.

Defendants' contention that a meritless arbitration proceeding cannot form the basis of a malicious prosecution claim is based entirely on a single out-of-state decision and is inconsistent with the New York cases holding that a malicious prosecution action may be based on proceedings that have the characteristics of judicial proceedings (i.e., a hearing of the issues on evidence and testimony under oath, with the right of cross-examination).  Defendants' contention that they should be permitted to avoid liability because they brought the underlying arbitration in the name of Augustus is also inconsistent with New York law, which holds that the real "movers" behind the malicious litigation, including an attorney who instituted it with the requisite malice, may be held liable.  Additionally, Leonard's claim that the complaint does not sufficiently allege that she acted with the requisite malice cannot be maintained in light of the complaint's allegations that she knew that there was no basis for the arbitration proceeding.  It is elementary in New York that the malice necessary to support a malicious prosecution cause of action may be inferred from the lack of probable cause.

Defendants are also wrong when they claim that Sankin has not sufficiently pleaded the required "special injury."  The loss of his business relationship with Perceptive and the aggravation of his grave health problems were both pleaded as direct consequences of defendants' initiation of the arbitration and are both sufficient to constitute "special injury" under New York law.

Finally, defendants' attempt to invoke collateral estoppel as a bar to Sankin's action is meritless.  While it is true that the arbitration panel denied Sankin's request for his attorney's fees as a "sanction" against defendants for their "frivolous" arbitration demand, that denial could

2

have been based on a number of grounds. Contrary to defendants' contention, it does not necessarily resolve the question of whether the arbitration was commenced without probable cause.

## FACTS

In analyzing a motion to dismiss pursuant to Rule 12(b) (6), the court must assume that all of the factual allegations in the complaint are true. See, e.g., Erickson v. Pardus, — U.S. — , 127 S. Ct. 2197, 2200 (2007). Accordingly, for purposes of the instant motions, Sankin relies on the facts set forth in his complaint.[1]

**A.     The Parties**

Defendant Abeshouse is the sole owner and managing member of Augustus Capital LLC ("Augustus"), a firm with a principal place of business at 550 Mamaroneck Avenue, Suite 508, Harrison, New York. Complaint ¶¶ 2, 9. Augustus is a member of the Financial Industry Regulatory Authority ("FINRA"). Complaint ¶ 11. Defendant Leonard, who is married to Abeshouse, is a licensed attorney and apparently serves as Augustus's general counsel. Complaint ¶¶ 2, 10.

**B.     The Parties' Business Relationship**

In February 1999, Sankin became a registered representative of Augustus. Complaint ¶ 12. As a result of the arrangement, Sankin was able to maintain his broker-dealer license at Augustus and to receive a list of prospective investors from that firm. Complaint ¶ 14.

On March 16, 2000, Sankin entered into a Selling Agreement (the "Selling Agreement") with a group of biotechnology hedge funds, i.e., Perceptive Life Sciences Fund, L.P., Perceptive Life Sciences Qualified Fund, L.P., and Perceptive Life Sciences Offshore Fund LTD

---

[1]     A copy of the complaint is attached to the declaration of Terence McCormick for the Court's convenience.

(collectively, "Perceptive").  Complaint ¶¶ 2, 13.  Under this Selling Agreement, Sankin was to sell interests in Perceptive and be compensated with a specific number of "basis points" of the funds invested in Perceptive due to his efforts.  Complaint ¶¶ 2, 13.  Sankin, in turn, was to share his commissions on Perceptive sales with Augustus to the extent that those sales were made to investors connected with Augustus.  Complaint ¶ 14.  Augustus's right to receive a share of Sankin's commissions was applicable only to commissions paid to Sankin during the period when Sankin was a registered representative at Augustus.  Complaint ¶ 14.

During the five-and-a-half-year business relationship between Sankin and Augustus, First New York Securities, LLC, which executed the bulk of Perceptive's securities trades, sent Abeshouse monthly statements of Sankin's earned commissions along with a check for those commissions.  Abeshouse sent Sankin the amount that remained after Augustus's share was subtracted.[2]  Complaint ¶ 16.  As a matter of routine practice, Sankin and Abeshouse negotiated the "basis points" that Augustus would receive for each Perceptive investor or group of investors.  Complaint ¶ 15.  Whenever Sankin's commission was reduced by Perceptive, Sankin negotiated a reduced commission rate due to Augustus.  Complaint ¶ 15.

## C.    Abeshouse's Demands for a Bigger Share

During the five and a half years he was associated with Augustus, Sankin's earnings from the sale of Perceptive interests increased dramatically.  Complaint ¶ 17.  For the first 46 consecutive months of the relationship, Abeshouse had no complaints about the commission statements he received.  Complaint ¶ 18.  However, in early 2004, as Sankin's earnings from Perceptive sales increased, Abeshouse began to express dissatisfaction with the parties' existing

---

[2]    Sankin gave Abeshouse a separate statement detailing the commissions he earned from Perceptive sales and Augustus's share of those sales.  Complaint ¶ 16.

financial arrangement.  Complaint ¶ 18.  Now that Sankin was experiencing considerable financial success, Abeshouse claimed that he was "reluctant to go back on" the "deal" he and Sankin had, but nevertheless demanded a bigger share of Sankin's Perceptive commissions. Complaint ¶ 18.

Although he was not required to do so, Sankin attempted to placate Abeshouse by agreeing to give Augustus an additional $1,000 per month, purportedly to compensate for unspecified "overhead" costs.  Complaint ¶ 19.  However, this "good will" gesture did not satisfy Abeshouse, who continued to express his resentment that Sankin was making significantly more from Perceptive sales than he had anticipated.  Complaint ¶¶ 19-21.

## D.      Defendants Apply Pressure to Sankin, Culminating in Their Malicious Initiation of an Arbitration Claim That They Knew Was False

In June 2004, Leonard wrote an "opinion letter" for Abeshouse (her husband) in which she advised him to charge Sankin "additional fees" if he did not accede to a new compensation plan.  Complaint ¶ 21.  She concluded the "opinion letter" by advising Abeshouse to insert a note on Sankin's Form U5[3] that Sankin had so-called "compliance issues" if he refused Abeshouse's demand for a larger share of the Perceptive revenues.  Complaint ¶ 21.

However, rather than agreeing to the new compensation structure that Abeshouse was trying to impose, Sankin resigned from Augustus on July 8, 2004.  Complaint ¶ 23.  At that point, Sankin became a member of Perceptive Advisers, an entity affiliated with the Perceptive

---

[3]      The Form U5 is the Uniform Termination Notice for Securities Industry Registration, promulgated by the NASD (now "FINRA").  Upon the termination of a stockbroker, FINRA requires broker/dealers to complete and file with FINRA a Form U5 notice within 30 days of termination (*see* NASD By-Laws, Article V, Sec. 3(a)).  FINRA stores the Form U5 on its Central Registration Depository ("CRD"), an on-line registration and licensing database used by regulators throughout the securities industry to register, license and regulate brokers.  Through one component of the CRD called "BrokerCheck," any investor may obtain certain information about the broker simply by looking the broker up on the FINRA website, including whether he or she has been the subject of regulatory compliance issues.

group. Complaint ¶ 24. As a result, the commission arrangement he had with Perceptive pursuant to the Selling Agreement came to an end. Complaint ¶ 24.

Even after his resignation from Augustus, however, Abeshouse continued to hound Sankin with emailed threats and demands for more money. Abeshouse's demand for a continuing share of Sankin's commissions was directly contrary to the parties' agreement that Abeshouse's rights would terminate once Sankin was no longer associated with Augustus. Complaint ¶ 28.

In addition to his demands for continuing commission payments, Abeshouse made veiled threats that he would take action regarding Sankin's Form U5 if Sankin did not reconsider his resignation and accept the new compensation structure Abeshouse had proposed. Complaint ¶ 25. When these threats failed to produce the result he sought, Abeshouse made good on his threats by indicating on Sankin's Form U5 that Sankin had been "permitted to resign" and that the resignation was the result of a "dispute . . . regarding Augustus Capital LLC's compliance policies." Complaint ¶ 26. These derogatory comments were completely untrue and were intentionally made by Abeshouse for the sole purpose of impairing Sankin's future employment opportunities. Complaint ¶ 27.

E.    **Defendants' Prosecution of the Arbitration Proceeding**

In early 2005, Sankin was diagnosed with renal cell carcinoma and required immediate surgery to have his cancerous kidney removed. Complaint ¶ 29. Defendants were aware of Sankin's illness and of the fact that he was scheduled for surgery on or about May 11, 2005. Complaint ¶¶ 30, 36. Nevertheless, they served him with a demand for NASD arbitration on May 10, 2005 based on a claim by Augustus that Sankin owed it various fees and commissions. Complaint ¶¶ 2, 36.

At the time they initiated the arbitration, defendants knew that the claim was baseless.  In fact, the claims they made in the arbitration were directly contrary to acknowledgements that Abeshouse had made in previous emails.  Complaint ¶¶ 18, 37; Complaint ¶ 3.  According to the complaint, defendants commenced the arbitration proceeding in Augustus's name as part of their continuing scheme to force Sankin to enter into a new commission-sharing agreement.  Complaint ¶ 3.

Although they knew of Sankin's illness and surgery, defendants were uncooperative in granting requested extensions of arbitration deadlines.  Complaint ¶ 13.  Such extensions were particularly needed because Sankin's recovery from surgery was impaired by a life-threatening infection requiring that he remain hospitalized for an extended period.  Complaint. ¶ 31.

Throughout the arbitration proceeding, defendants deliberately misrepresented their rights under their agreement with Sankin.  For example, they claimed that he was supposed to pay additional commissions, such as a "Placement Fee," a "Marketing Fee" and a "Broker-Dealer Fee" even though they knew that no such fees were called for in the parties' agreement.  Complaint ¶ 33.  Abeshouse's true motives in prosecuting the arbitration were revealed in an off-the-record comment he made to one of Sankin's attorneys to the effect that "I don't care if I win or lose, I just like to fight."  Complaint ¶ 34.

The NASD arbitration proceeding was held on April 9, April 11, June 12, June 13 and June 14, 2007.  Complaint ¶ 32.  The proceeding terminated wholly in Sankin's favor.  Complaint ¶ 38.  Moreover, the arbitration panel found that the statements defendants made in Sankin's Form U5 were defamatory.  Complaint ¶ 38.  In fact, the panel recommended that the statements in the Form U5 be expunged and replaced with a statement that Sankin's departure from Augustus had been "voluntary."  Complaint ¶ 38.

7

**F.        Sankin's Malicious Prosecution Action**

On October 12, 2007, following the docketing and entry of the arbitration award, Sankin commenced the instant action against Abeshouse and Leonard in the Supreme Court of the State of New York.  The complaint sets forth a single cause of action for malicious prosecution and seeks damages to compensate Sankin for his damages, including the costs of defending against defendants' frivolous arbitration claims.  Complaint ¶ 40.

With respect to the "special injury" requirement, Sankin's complaint asserts that defendants' malicious prosecution damaged Sankin's relationship with Joseph Edelman, the Managing Member of Perceptive, "and was a contributing factor in Sankin's removal as an officer of Perceptive Advisors."  Complaint ¶¶ 6, 40.  Additionally, "Sankin's recovery from cancer was adversely affected" as a "direct, proximate result of [d]efendants' malicious prosecution."  Complaint ¶ 40.

On November 20, 2007, defendants removed the action to federal court on the asserted basis of diversity.  Defendants subsequently moved to dismiss the action under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The motions should be denied, since the complaint's allegations are more than sufficient to set forth a cause of action for malicious prosecution under New York law.

## ARGUMENT

### A.    Standards for Dismissal Under Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a complaint for failure to state a claim for which relief can be granted.  On a motion to dismiss pursuant to this Rule, the issue is not whether the plaintiff is likely to prevail, but whether he or she should be permitted to offer evidence in support of the right to recovery.  Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007); Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006); York v. Association of the Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002); Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001).  Under this standard, any motion for dismissal faces a difficult hurdle.  Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999).

It is fundamental that a court considering a motion to dismiss a complaint under Rule 12(b)(6) "must accept as true all of the factual allegations contained in the complaint." Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 508 n.1 (2002); see, e.g., Erickson v. Pardus, — U.S. at — , 127 S. Ct. at 2200; Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 126 S. Ct. 1991, 1992 (2006); McCall v. Pataki, 232 F.3d 321, 322 (2d Cir. 2000).  Moreover, all inferences must be drawn in favor of the complaining party.  Patel v. Contemporary Classis of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).

On a Rule 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true, and draws all reasonable inferences in plaintiff's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). A pleading is sufficient if plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, — U.S. — ,127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  However, "[t]he issue is not whether a plaintiff is

9

likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'" Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (citations omitted).

In reviewing the complaint allegations, the court is not entitled to weigh the evidence that might be submitted in support of the claims. Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006); Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003). A complaint should not be dismissed simply because the plaintiff is unlikely to succeed on the merits. Baker v. Cuomo, 58 F.3d 814 (2d Cir. 2003), overruled on other grounds by Baker v. Pataki, 85 F.3d 919 (2d Cir. 1996)(en banc). Dismissal is not an appropriate remedy for a legally sufficient complaint, even where it appears from the face of the complaint that recovery is very remote and unlikely. Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998), aff'd after remand 159 F.3d. 1345 (2d Cir. 1998); Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984), aff'd after remand, 865 F.2d. 492 (2d Cir. 1989).

Under these standards, it is apparent that Sankin's complaint is legally sufficient and that dismissal at this early stage in the proceeding is wholly unwarranted.

**B.      Elements of Malicious Prosecution Under New York Law**

It is undisputed that the substantive law of New York applies to Sankin's malicious prosecution claim. Under New York law, a cause of action for malicious prosecution requires a showing that (a) the defendant brought a legal proceeding without probable cause, (b) the defendant acted with malice and (c) the proceeding terminated in the malicious-prosecution plaintiff's favor. See, e.g., Martinez v. City of Schenectady, 97 N.Y.2d 78, 84, 735 N.Y.S.2d 868, 761 N.E.2d 560 (2001); Cantalino v. Danner, 96 N.Y.2d 391, 395, 729 N.Y.S.2d 405, 754 N.E.2d 164 (2001); Smith-Hunter v. Harvey, 95 N.Y.2d 191, 195, 712 N.Y.S.2d 438, 734 N.E.2d

750 (2000).  Additionally, when the underlying "prosecution" was civil, a "special injury" must be pleaded and proven.  See, e.g., Engel v. CBS, Inc., 93 N.Y.2d 195, 199, 689 N.Y.S.2d 411, 711 N.E.2d 626 (1999).

As is discussed more fully below, Sankin's complaint allegations meet all of these requirements.

## C.    The Complaint More than Sufficiently Alleges the Commencement of an Actionable Legal Proceeding

Although malicious prosecution claims are most often brought to redress injuries resulting from criminal prosecutions, a cause of action for malicious prosecution may also be maintained in New York as a result of unjustified civil proceedings.  See, e.g., Manti v. New York City Transit Auth., 165 A.D.2d 373, 568 N.Y.S.2d 16 (1st Dep't 1991); Groat v. Town Board of Town of Glenville, 73 A.D.2d 426, 426 N.Y.S.2d 339 (3rd Dep't 1980), app. dismissed, 50 N.Y.2d 928 (1980).  As the New York courts have indicated, a prior civil proceeding may serve as a predicate for a malicious prosecution suit when it has the characteristics of a judicial proceeding, namely proceedings which require a hearing and trial of the issues on evidence and testimony under oath, with the right of cross-examination.  See Groat v. Town Board of Town of Glenville, 73 A.D.2d at 429; Tray Wrap, Inc. v. Pacific Tomato Growers Ltd., 18 Misc. 3d 1122(A), 2008 WL 222495, *12 (N.Y. Sup. Ct. Bronx Co. 2008); Glen v. State, 144 Misc. 2d 101, 104, 543 N.Y.S.2d 632, 634 (N.Y. Ct. Cl. 1989).

Although defendants do not dispute that the NASD arbitration proceeding that they initiated had those characteristics, they ask this Court to hold flatly that such an arbitration cannot, as a matter of law, form the basis of a malicious prosecution claim.  In support of their contention, defendants cite only a single decision, Brennan v. Tremoco, Inc., 25 Cal. 4th 310,

105 Cal. Rptr. 790, 20 P.3d 1086, 1088 (Cal. 2001), from a California court. Manifestly, this out-of-state authority is not authoritative precedent in this diversity proceeding governed by New York law.

Nor is Brennan persuasive precedent, since its analysis does not in any way intersect with the position of the few New York courts that have addressed analogous questions. For New York state, the controlling factor has consistently been whether the underlying proceeding had the critical earmarks of a judicial-type proceeding. The salient factor on which Brennan is based, i.e., the policies disfavoring derivative tort litigation, has not been mentioned by the New York courts in connection with this specific issue, much less treated as controlling. Indeed, research has not disclosed a single court outside of California in which Brennan has been cited on this issue. Furthermore, the view expressed by the Brennan court is by no means universal. See Walford v. Blinder, Robinson & Co., Inc., 793 P.2d 620 (Col. App. 1990) (holding that judicially enforceable arbitration proceeding can form basis of malicious prosecution claim); cf. Neely v. First State Bank, 975 P.2d 435 (Okla. 1998)(assuming without deciding that arbitration proceeding may form basis of malicious prosecution action). Nor is the Brennan rationale particularly satisfying where, as here, Sankin had absolutely no choice but to submit to the arbitration as a matter of industry rules. (See NASD Manual ¶10201)(industry disputes "*shall be* arbitrated under this Code, at the instance of . . a member against a person associated with a member . . .")(emphasis supplied). Thus, defendants' effort to avoid responsibility for the harm caused by their actions based on a single non-New York decision should be rejected.

**D.      The Complaint Sufficiently Alleges Actionable Misconduct by These Individual
Defendants**

Abeshouse and Leonard also seek dismissal on the ground that the underlying arbitration

claim was brought in the name of Augustus, Abehouse's business corporation, rather than

Abeshouse or Leonard personally.   However, a virtually identical argument was rejected in

Burke v. Musarra, 46 Misc. 2d 933, 261 N.Y.S.2d. 314 (N.Y. Sup. Ct. Erie Co. 1965) (Jasen, *J.*).

In that carefully reasoned decision, the court held that a corporate officer may be held liable for a

malicious prosecution brought on behalf of a corporation where the officer has directed the

corporation's tortious acts.   This holding makes eminent sense in light of the requirement under

New York law that the defendant in a malicious prosecution case must have acted with actual

"malice," which the case law defines as an improper motive.   Such a motive is unlikely to exist

in a fictitious entity such as a corporation.   See Nardelli v. Stamberg, 44 N.Y.2d 500, 406

N.Y.S.2d 443, 377 N.E.2d 975 (1978).

Under the analysis in Burke, there is no doubt that Sankin has pleaded a valid claim

against Abeshouse personally.   The complaint's allegations, taken as true, establish that

*Abeshouse* commenced an arbitration proceeding in Augustus's name for fees and commission

that *he* knew were not owed (¶¶ 33, 36-37).   Read as a whole, the complaint allegations leave no

doubt that Abeshouse was "the *real* party, the *mover*, and *manager* and *controller* of the

prosecution."   Miller v. Milligan, 48 Barb. 30 (N.Y. Sup. Ct. N.Y. Co. 1866) (Hogeboom, *J.*)

(emphasis in original).   Indeed, Abeshouse acknowledged as much when he stated during the

course of the arbitration proceeding: "*I* don't care if *I* win or lose, *I* just like to fight."   Complaint

¶ 39 (emphasis supplied).[4]

---

[4]      The unreported decision and order in Strumpf v. Asdourian, 2006 N.Y. Misc.  LEXIS 3976, on which both
defendants rely, is not persuasive authority to the extent it suggests that an individual who wishes to use

For similar reasons, defendant Leonard, who acted as Augustus's attorney, may be held personally liable under the allegations in Sankin's complaint. Those allegations assert that Leonard wrote an opinion letter that acknowledged the existing agreement between Sankin and Abeshouse but nevertheless suggested that he and Augustus claim "additional fees" and mark his Form U5 with a false statement if Sankin would not go along with Abeshouse's new demands. Complaint ¶ 21. Moreover, the complaint alleges that Leonard (Augustus's attorney), as well as Abeshouse, initiated and fully participated in the arbitration and that Leonard was Augustus's "general counsel." Complaint ¶¶ 9, 30, 31.

Even if Leonard's role was limited to that of an attorney, it is clear that she may be held liable. The law in New York is clear that an attorney who acts with malice or without probable cause is not immune because he or she acted as an attorney. New York Pattern Jury Instructions (3rd ed.), Vol. 2, p. 480; see Bervey v. Hotaling, 88 A.D.2d 735, 736, 451 N.Y.S.2d 863 (3rd Dep't 1982); Schierloh v. Kelly, 253 App. Div. 373, 374, 2 N.Y.S.2d 188 (2nd Dep't 1938). Whether her alleged actions are treated as having been undertaken as Augustus's attorney or as Abeshouse's spouse and helpmate, they establish that Leonard was an active and knowing participant in a prosecution aimed at punishing and harassing Sankin.

---

legal process to harm another may act with impunity as long as he or she hides behind a corporate "veil." Moreover, as Augustus is a limited liability company, the income from Augustus passed through directly to Abeshouse, as in the case of a subchapter S corporation. In any event, Sankin is entitled to prevail on this motion even if the Strumpf analysis were to be applied, since the complaint allegations are clearly sufficient to show that Abeshouse exercised complete dominion and control over Augustus with respect to the transaction in issue (i.e., the arbitration) and that he used that dominion and control to commit a wrong against Sankin. See Matter of Morris v. New York State Dept. of Taxation & Finance, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 802, 623 N.E.2d 1157 (1993); Fisher v. Zaks, — A.D.3d —, — N.Y.S.2d — , 2008 WL 324354 (1st Dep't Feb. 7, 2008). Once again, his own statement that "I don't care if I win or lose, I just like to fight" shows that Abeshouse was using the arbitration as his personal instrument and to gratify his personal wishes. See Complaint ¶ 39 (emphasis supplied).

**E.    Sankin's Complaint Sufficiently Alleges that Defendant Leonard Acted With Malice**

Only defendant Leonard attempts to argue that the complaint lacks a sufficient basis to infer that she acted with the requisite malice.  Defendant Abeshouse does not make the same claim.[5]  It is apparent, however, that the complaint contains allegations that are more than sufficient to establish that *both* defendants acted with actual malice.

Under New York law, actual malice is equated with improper motive.  Nardelli v. Stamberg, 44 N.Y.2d at 503, 406 N.Y.S.2d at 445, 377 N.E.2d at 976.  The requirement may be satisfied by a showing of ill will (although ill will is not strictly required).  Id.  In most cases, the element of malice is established circumstantially.  See Dean v. Kochendorfer, 237 N.Y. 384, 143 N.E.2d 229 (1924); Ramos v. New York, 285 A.D.2d 284, 729 N.Y.S.2d 678 (1st Dep't 2001); Giglio v. Delesparo, 46 A.D.2d 928, 361 N.Y.S.2d 721 (3rd Dep't 1974).  Since the jury may infer malice from the lack of probable cause, see Martin v. Albany, 42 N.Y.2d 13, 396 N.Y.S.2d 612, 364 N.E.2d 1304 (1977); Hicks v City of Buffalo, 295 A.D.2d 880, 745 N.Y.S.2d 349 (4th Dep't 2002), allegations establishing lack of probable cause are alone sufficient to make out a prima facie case on the question of malice, Krisanda v. Miller, 205 A.D.2d 1029, 614 N.Y.S.2d 73 (3rd Dep't 1994).

Under this standard, Sankin's complaint is clearly sufficient as against both Abeshouse and Leonard.  The complaint alleges in several paragraphs that there was no probable cause for the arbitration proceeding.  Complaint ¶¶ 18, 21, 33, 37.  Indeed, according to the complaint, both defendants acknowledged that Sankin had met his obligations under his contract.  Further,

---

[5]    Neither defendant disputes that the complaint sufficiently alleges that the arbitration proceeding was commenced without probable cause.  Nor could such a claim be made, since the complaint asserts that both defendants knew that the amounts sought in the arbitration proceeding were not owed.  Complaint ¶¶ 18, 21, 33, 37.

the complaint asserts, defendants knew from the outset that their claims for fees and additional commissions in the arbitration proceeding were false. Complaint ¶ 33. These allegations are alone sufficient to establish, *prima facie*, both the lack of probable cause and the requisite malice.

### F.    Sankin's Complaint Amply Alleges Special Injury in the Form of A Substantial Interference with Sankin's Business and His Person

The complaint allegations establish that Sankin suffered injury well beyond the normal physical, psychological or financial demands of defending a lawsuit. First, the complaint asserts that defendants' misconduct in commencing the arbitration proceeding soured the relationship between Sankin and Perceptive, resulting in his removal as an officer of the company. Complaint ¶¶6, 40. As a result, Sankin lost the opportunity to continue to earn the hundreds of thousands of dollars in commissions from sales of interests in Perceptive that he had previously realized. Second, the arbitration exacted a grievous toll on Sankin's health, aggravating the effects of his bout with cancer. Complaint ¶ 40. Nevertheless, relying upon the decision of the New York Court of Appeals in Engel v. CBS, Inc., 93 N.Y.2d 195, 689 N.Y.S.2d 411, 711 N.E.2d 626 (1999), defendants take the position that the harms enumerated in Sankin's complaint are not "special injury" at all, but are simply the "damages normally attendant upon being sued." Leonard Mem. at 15 (citation omitted). Engel, however, is of no help to defendants.

The policy choice that the New York Court of Appeals made in Engel proceeded from a concern that the plaintiffs in the original suit "remain relatively free from the threat of retaliatory lawsuits in bringing their good faith claims." Engel v. CBS, Inc., 93 N.Y.2d at 204, 689 N.Y.S.2d at 416, 711 N.E.2d at 630. Thus, by requiring plaintiffs to show "special injury" under New York law, the Engel court sought to place a substantive buffer in the cause of action itself –

16

beyond the required showing of malice and lack of probable cause – to screen out purely retaliatory lawsuits. But Abeshouse and Leonard (or for that matter, Augustus Capital, LLC) were *hardly* plaintiffs who brought "good faith claims" and, in any case, the harm that Defendants inflicted upon Sankin in the underlying arbitration more than suffices to clear that additional buffer.

### 1.    Defendants' Malicious Institution of the NASD Arbitration Constituted a Grievous Interference with Sankin's Career

Defendants would have the Court believe that recovery for malicious prosecution is restricted to cases where an aggrieved party had been subject to an arrest, attachment or injunction. (Abeshouse Mem. at 10-11; Leonard Mem. at 16-17). However, as the Engel court put it, "[t]o limit the special injury standard in wrongful civil proceedings to 'interference with person' in the sense of an arrest, provides a mold that the law would seldom fill." Engel v. CBS, Inc., 93 N.Y.2d at 205, 689 N.Y.S.2d at 417, 711 N.E.2d at 631. Accordingly, rather than adhering to the narrow view defendants espouse, New York courts find that the element of special injury is adequately established by any "highly substantial and identifiable interference with person, property or business." Id. (citing Groat v. Town Bd. of Town of Glenville, 73 A.D.2d 426, 426 N.Y.S.2d 339 (3rd Dep't 1980)). As the Engel court explained:

> what is "special" about special injury is that the defendant must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit. This standard strikes the balance required between discouraging excess litigation on the one hand and prohibiting the malicious use of the courts on the other.

Engel, 93 N.Y.2d at 205, 689 N.Y.S.2d at 417, 711 N.E.2d at 631.

Thus, in addition to the obvious examples of attachment (see Ford Motor Credit Co. v. Hickey Ford Sales, Inc., 62 N.Y.2d 291, 476 N.Y.S.2d 791, 465 N.E.2d 330 (1984) and

17

injunction (see Burt v. Smith, 181 N.Y. 1, 73 N.E.2d 495 (1905)), New York courts find "special injury" in other instances where the malicious use of the previous lawsuit substantially interfered with the person, property or business of the aggrieved plaintiff.  For example, where a police officer had been suspended without pay, dismissed from his position on the force and his professional and personal reputation were injured by the bringing of a police administrative proceeding, the harm was found to constitute special injury within the meaning of the law.  Groat v. Town Bd. of Town of Glenville, 73 A.D.2d 426, 426 N.Y.S.2d 339; Fulton v. Ingalls, 165 App. Div. 323, 151 N.Y.S. 130 (2nd Dep't 1914), aff'd, 214 N.Y. 665, 108 N.E.2d 1094 (1915) (suspension of plaintiff from duty and temporary disgrace pending determination of charges brought in an administrative proceeding).  See also Dudick v. Gulyas, 277 A.D.2d 686, 716 N.Y.S.2d 407 (3rd Dep't 2000) (loss of business caused by complaint to Office of Professional Discipline).

Here, defendants' malicious initiation and prosecution of the NASD arbitration damaged Sankin's relationship with Edelman, Perceptive's principal, and was a contributing factor in Sankin's removal as an officer of Perceptive Advisors.  Complaint ¶¶ 6, 40.  Where a defendant has previously instituted a malicious civil proceeding, with the result that the aggrieved plaintiff has lost identifiable business relationships, the lost business has been held to be "special injury" transcending the usual costs attendant to defending a meritless civil action.  Dudick, 277 A.D.2d at 688, 716 N.Y.S.2d at 409 (chiropractor's loss of business following groundless complaint of professional misconduct before New York Insurance Department found to constitute special injury); cf. Wilhelmina Models, Inc. v. Fleisher, 19 A.D.3d 267, 269, 797 N.Y.S.2d 83, 84 (1st Dep't 2005)(special injury not found where no clients lost).

Moreover, the very fact of the NASD arbitration, as well as the defamatory statements that defendants had recorded on Sankin's Form U-5 termination statement, constituted red flags on Sankin's record with the NASD and remained such until the panel recommended that the statements be expunged from Sankin's public record.  Reputational injury beyond the mere fact of being named as a defendant in a civil suit has thus been long recognized as a form of special injury that will support a cause of action for malicious prosecution.  See Watson v. City of New York, 57 Misc. 2d 542, 293 N.Y.S.2d 348 (N.Y.C. Civ. Ct. 1968).

### 2.    By Pressing the Arbitration Against a Cancer Patient, Defendants Inflicted Yet Another Special Injury Recognized by New York Courts

In Thyroff v. Nationwide Mut. Ins. Co., 05 Civ. 6607, 2006 WL 2827082, *4 (W.D.N.Y. Sept. 29, 2006), the court recognized that, when occasioned by a malicious civil prosecution, "severe emotional harm which required both psychological counseling and medication . . . satisfies a claim of 'special injury."  In so ruling, the Thyroff court relied on Engel and observed that, in that case, the New York's highest Court had "cit[ed] with approval cases in which courts found that claims of extreme emotional harm could establish existence of a special injury."  Id. Here, the stress of litigation was even more "severe" and more consequential than the harm considered in Thyroff, interfering with Sankin's recovery.   On that basis alone, this Court should conclude that "special injury" is sufficiently alleged and that the complaint should be sustained.

### G.    Sankin Is Not Collaterally Estopped from Asserting That the Arbitration Lacked Probable Cause

In a diversity case such as this one, the federal courts apply the law of the forum state in determining whether a prior arbitration award collaterally estops a party from relitigating a particular issued.  See, e.g., BBS Norwalk One, Inc. v. Raccolta, Inc., 117 F.3d 674 (2d Cir. 1997).   The law of New York, which is controlling here, permits application of collateral-

estoppel principles to issues resolved in arbitration, assuming there was a final determination on the merits. Postlewaite v. McGraw-Hill, Inc., 333 F.3d 42, 48 (2d Cir. 2003), aff'd after remand, 411 F.3d 63 (2d Cir. 2005).

As a general rule, New York courts employ a two-part test, holding that: a party is estopped from relitigating an issue when that issue was necessary to the resolution of the prior proceeding, and the party against whom estoppel is invoked had a full and fair opportunity to contest that issue in the previous litigation. PenneComm B.V. v. Merrill Lynch & Co., 372 F.3d 488 (2d Cir. 2004); Cobb v. Pozzi, 363 F.3d 89, 113 (2d Cir. 2004). The party seeking to invoke collateral estoppel has the burden of showing that the issues in the two proceedings are identical and that the issue was "necessarily" decided in the prior proceeding. Rosa v. City Univ. of N.Y., 04 Civ. 9139 (KMW), 2007 WL 1001416 at *2 (S.D.N.Y. Apr. 2, 2007). Moreover, if the prior decision was not explicit on the point sought to be precluded, then collateral estoppel will be applicable only "[i]f by necessary implication it is contained in that which has been explicitly decided." Norris v. Grosvenor Mktg. Ltd., 803 F.2d 1281, 1285 (2d Cir.1986) (citation omitted). To invoke collateral estoppel based on an earlier arbitration, the proponent must show "with clarity and certainty" that the same issues were resolved in the arbitration, Bear Stearns & Co., Inc. et al. v. 1109580 Ontario Inc., 409 F.3d 87, 91 (2d Cir. 2005) (citing Postlewaite v. McGraw-Hill, Inc., 333 F.3d at 49); see also Clark v. Bear Stearns & Co. Inc., 966 F.2d 1318, 1321 (9th Cir. 1992). Thus, "[i]ssue preclusion will apply only if it is quite clear" that this requirement has been met. Colon v. Coughlin et al., 58 F.3d 865, 869 (2d Cir. 1995).

In this case, defendants are attempting to use the arbitrator's decision not to grant Sankin attorney's fees under New York State Trial Court Rule 130.1-1, 22 N.Y.C.R.R. § 130.1-1, as a basis for precluding Sankin from litigating here the issue of whether the underlying arbitration

lacked probable cause.  However, there is simply no identity between the question of probable cause and the question of entitlement to arbitral attorney's fees under Rule 130.1-1.

Rule 130.1-1, which is somewhat analogous to Rule 11 of the Federal Rules of Civil Procedure, permits the imposition of sanctions as a penalty for "frivolous" litigation conduct.[6] As the language of the Rule makes clear, the decision to grant or withhold relief under the provision is wholly discretionary.  22 N.Y.C.R.R. § 130.1-1(a) ("[t]he court, *in its discretion, may* award to any party or attorney in any civil action or proceeding . . . costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees" [emphasis supplied]).  See, e.g., Todd Layne Cleaners LLC v. Maloney, 17 Misc. 3d 1114(A), 2007 WL 3023036 (Civ. Ct. N.Y.C. 2007).  Thus, a decision by an arbitration panel not to award Rule 130.1-1 sanctions could mean nothing more than that it was merely electing not to use its discretionary authority under the particular circumstances of the case.  It certainly does not mean that the panel affirmatively determined that, as a matter of law, the litigant had not met the Rule's test for "frivolous conduct."  Alternatively, an arbitration panel that declines to award attorney's fees under Rule 130.1-1 could simply be following the holding in Emery Roth & Sons, P.C. v. M & B Oxford 41, Inc., 298 A.D.2d 320, 750 N.Y.S.2d 10 (1st Dep't 2002), that the Rule does *not* operate as a source of authority for arbitrators (who may award attorney's fees only to the extent permitted by contract).  See Matza v. Oshman, Helfenstein & Matza, 33 A.D.3d 493, 494, 823 N.Y.S.2d 47, 48 (1st Dep't 2006); Grossman v. Laurence Handprints-N.J., Inc., 90 A.D.2d 95, 101, 455 N.Y.S.2d 852, 856 (2nd Dep't 1982); see also, Blumenthal v. Merrill

---

[6]    Under the Rule, a proceeding or motion is "frivolous" if: "(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false."  22 N.Y.C.R.R. § 130.1-1(c).

Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1055, Fed. Sec. L. Rep. ¶95,417 (2d Cir. 1990)(claim preclusion unavailable if arbitrators lacked authority to rule on the matter sought to be precluded).  In any event, the arbitrators' *unexplained* decision in this case not to grant Sankin's request for attorney's fees under Rule 130.1-1 certainly does not "by necessary implication" establish a rejection of his claim in this litigation that defendants initiated the arbitration without having had "probable cause."  Indeed, where, as here, it is impossible to discern the basis for the panel's decision, or the decision could rest upon any number of different rationales, collateral estoppel is ill-suited for application to an arbitral award.  See, e.g., O'Neill v. Merrill Lynch, Pierce, Fenner & Smith, 654 F. Supp. 347, 352-53 (N.D.Ill. 1987)(collateral estoppel inappropriate in light of ambiguity of basis for unreasoned award, summary judgment denied).

Finally, even if there were not two strictly procedural explanations for the arbitrators' decision, it could not be said that a decision denying Rule 130.1-1 relief necessarily constitutes a determination of the question of whether the proceeding was brought without probable cause.  In a malicious prosecution action, lack of probable cause means the absence of "'such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty.'"  Fink et al. v. Shawangunk Conservancy, Inc., 15 A.D.3d 754, 790 N.Y.S.2d 249 (3rd Dep't 2005) (quoting Colon v. City of New York, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d. 1248, 1250 (1982)).  This is a markedly less exacting test than the one for "frivolous conduct" under Rule 130.1-1, which requires a showing that the arbitration is "completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) . . . is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) . . .

22

asserts material factual statements that are false." 22 N.Y.C.R.R. § 130.1-1(c).  In sum,

defendants have not established that the lack of probable cause was an issue that was actually or

necessarily decided in the arbitration proceeding.   The motions should therefore be denied.

## CONCLUSION

For all of the foregoing reasons, defendants' motions for dismissal under Rule 12(b)(6)

should be denied in their entirety.


Dated: New York, New York
        February 11, 2008


**MINTZ & GOLD LLP**


/s/ Terence W. McCormick
Terence W. McCormick (TM 2713)
470 Park Avenue South
10th Floor North
New York, New York 10016-6819
Tel: (212) 696-4848
Fax: (212) 696-1231
mccormick@mintzandgold.com
*Attorneys for Plaintiff*

23