STEWART OCCHIPINTI, LLP
Charles A. Stewart, III (CS-7099)
65 West 36th Street, 7th Floor
New York, New York 10018
Telephone: (212) 239-5500
Facsimile: (212) 239-7030
cstewart@somlaw.com

*Attorney for Defendant Mark Abeshouse*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X
ANDREW C. SANKIN,                                )
                                                 )
                    Plaintiff,                   )      7:07-cv-10491-CLB-LMS
                                                 )
                                                 )
        -against-                                )
                                                 )
MARK ABESHOUSE and RHONDA                        )
LEONARD,                                         )      **REPLY DECLARATION**
                                                 )
                    Defendants.                  )
                                                 )
---------------------------------------------------X

## REPLY DECLARATION OF CHARLES A. STEWART, III IN FURTHER SUPPORT OF DEFENDANT MARK ABESHOUSE'S MOTION TO DISMISS COMPLAINT

Charles A. Stewart, III, hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1.    I am a member of Stewart Occhipinti, LLP, attorneys for Mark Abeshouse, one of the defendants in the above captioned action. I respectfully submit this declaration in support of Defendants' motions, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims against each of them, with prejudice, and for such other and further relief as the Court deems just and proper.

2.    Attached hereto as Exhibit A is a true and accurate copy of Respondent Andrew Sankin's First Request for Production of Documents in the National Association

of Securities Dealers ("NASD") arbitration proceeding between Augustus Capital LLC

("Augustus") and Andrew Sankin (the "NASD Proceeding").  The NASD Proceeding

forms the basis for Sankin's instant malicious prosecution action against Abeshouse and

Rhonda Leonard ("Leonard"), Abeshouse's wife.

   3.  Attached hereto as Exhibit B is a true and accurate copy of Mr.

Sankin's First Set of Document Requests to Mark Abeshouse in the instant action.  These

requests were received after the filing of Mr. Abeshouse's motion to dismiss.


Dated: New York, New York
   February 22, 2008

                       _____
                         Charles A. Stewart, III

**EXHIBIT A**

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*1177 Avenue of the Americas • New York, NY 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*Writer's Direct Dial: (212) 896-5439*
*E-Mail Address: WilliamsB@dsmo.com*

October 11, 2005

**BY FEDERAL EXPRESS**

Charles A. Stewart, III, Esq.
Stewart Occhipinti, LLP
1350 Broadway
Suite 2200
New York, New York  10018

Re:     Augustus Capital LLC v. Sankin, NASD No. 05-02528

Dear Mr. Stewart:

Enclosed please find Respondent's First Request for the Production of Documents.  Please contact me should you have any questions.

Very truly yours,

Bernard A. Williams, Esq.

Encl.

cc:    Mr. Bola Aguda, Esq.

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*www.DicksteinShapiro.com*

NATIONAL ASSOCIATION OF SECURITIES DEALERS
ARBITRATION PROCEEDING – NEW YORK CITY

| | | |
|---|---|---|
| AUGUSTUS CAPITAL LLC, | ) | NASD Arbitration No. 05-02528 |
| Claimant, | ) | |
| | ) | |
| v. | ) | RESPONDENT'S FIRST REQUEST |
| | ) | FOR THE PRODUCTION |
| ANDREW C. SANKIN | ) | OF DOCUMENTS |
| Respondent. | ) | |
| | ) | |

Pursuant to Section 10321 of the NASD Code of Arbitration Procedure, Respondent Andrew C. Sankin ("Sankin"), by and through his undersigned counsel, hereby requests that Claimant Augustus Capital LLC produce by November 10, 2005 all of the documents and other things designated below at the offices of Dickstein, Shapiro, Morin & Oshinsky LLP, 1177 Avenue of the Americas, New York, New York 10036.

<u>DEFINITIONS</u>

1. The term "Abeshouse" means Mark Abeshouse, and shall include his assignees, agents, intermediaries, Representatives, and all other Persons acting on his behalf.

2. The terms "Augustus" and "Claimant" mean Augustus Capital LLC, and shall include its corporate affiliates, divisions, parents, subgroups, subsidiaries, area or regional offices, predecessors-in-interest, successors, assignees, agents, intermediaries, Representatives, trustees, consultants, all other Persons acting on its behalf, and its present and former officers, directors, servants and employees.

3. The term "Communication" means any writing transmitted between Persons or any oral conversation of any kind or character, and shall include, by way of example and without limitation, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic, telex, computer, e-mail and facsimile communications or transmittals of Documents,

and all Documents concerning such writings or oral conversations. Communication as used herein specifically includes internal writings, oral conversations or meetings among the officers, board members, employees or other Representatives of Claimants.

4. The term "Concerning" means relating to, referring to, describing, evidencing or constituting.

5. The term "Document" is used in the broadest sense permissible and means any writing (whether printed, typed, photocopied, handwritten, recorded, stored, produced or reproduced by any other process), tangible thing, or any other compilation of information that is within Your possession, custody or control, and shall include, without limitation, any and all:

a. accountants' or other work papers, advertising circulars, advisories, agreements, appointment books, articles, bills, binders, books, brochures, bulletins, cables, calendars, certificates of insurance, charts, checks, circulars, communications (intra-office, inter-office, external and other), computer printouts, confirmations, contracts, correspondence, cover sheets, desk-pads, diaries, drafts, drawings, exhibits, facsimiles, financial statements, flyers, forecasts, graphs, guidelines, invoices, instructions, letters, lists, logs, manuals, memoranda, messages, minutes of meetings, notebooks, notes, outlines, pamphlets, periodicals and clippings from periodicals, placement slips, pleadings, policies, post-it notes, projections, prospectuses, questionnaires, receipts, records, reports, rules, schedules, statements, studies, subscription agreements or pages, summaries, telecopies, telefaxes, telegrams, telephone messages, telexes, transcripts, translations, treaties and worksheets;

b. graphic or audio records or representations of any kind, including, without limitation, photographs, charts, drawings, graphs, microfiche, microfilm, videotapes, recordings, and motion pictures;

21}

c. electric, electronic, magnetic, mechanical and optical records or representations of any kind, including, without limitation, tapes, cassettes, computer discs, compact discs, DVDs, MP3s, recordings, computer memories, or other electronic data compilations; and

d. drafts and final versions, originals and copies that differ from originals in any respect, including, without limitation, differences due to handwritten notes, editing, interlineations, blind copies, or any other alterations.

6. The term "Perceptive" means Perceptive Life Sciences Fund L.P., and shall include its corporate affiliates, divisions, parents, subgroups, subsidiaries, area or regional offices, predecessors-in-interest, successors, assignees, agents, intermediaries, Representatives, trustees, consultants, all other Persons acting on its behalf, and its present and former officers, directors, servants and employees.

7. The term "Person" includes both the singular and the plural, and means any natural person, business entity, corporation, cooperative, bureau, public corporation, partnership, joint venture, group, club, association, institute, society, office, organization, and any governmental entity or department, agency, bureau, or political subdivision thereof.

8. The term "Produce," with respect to a Document, means to attach a true and correct copy of the Document to your answers hereto.

9. The terms "referring to" or "relating to" mean constituting or comprising, concerning, referring or relating in any way, directly or indirectly, to the subject matter of the discovery request.

10. The term "Representative" includes both the singular and the plural and means:

a. any past or present officer, director, partner, associate, employee, servant, agent, subsidiary, affiliate, legal counsel, or any agent of such Person; and

31}

b. any other Person acting or purporting to act on behalf of, or in concert with such Person, including, without limitation, insurance brokers or agents, auditors, actuaries, and consultants of any type.

11. The terms "Sankin" and "Respondent" mean Andrew C. Sankin, and shall include his assignees, agents, intermediaries, Representatives, and all other Persons acting on its behalf.

12. The term "Statement of Claim" means the Statement of Claim filed in this matter on May 10, 2005, and any amendments thereto.

13. The term "You" and "Your" means each named Claimant, and each of its divisions, departments, area or regional offices, managing general agents, parents (whether whole or part owner), subsidiaries (whether wholly or partly owned), predecessors, successors, affiliates, each and any other legal entity within its control, and each of its officers, employees, agents, directors, servants, Representatives, attorneys, investigators, contractors, subcontractors, experts and consultants.

<u>INSTRUCTIONS</u>

1. You are required to produce all Documents that are in Your possession, custody or control, or in the possession, custody or control of any of Your Representatives, including Persons consulted concerning any factual matters or matters of opinion relating to any of the facts or issues involved in this case. Such Persons shall include attorneys with whom You consulted unless You claim such Documents are privileged or otherwise protected.

2. Each Request for a Document, whether memoranda, reports, letters, minutes, Communications or other Documents of any description, requires the production of the Document in its entirety, including all pages and attachments or exhibits, without redaction or expurgation.

41}

3. If any Document responsive to these Requests is withheld from production, please furnish a log providing the following information with respect to each withheld Document:

a. the type of Document (e.g., a letter, memorandum, note, etc.);

b. the date of the Document;

c. the identity (including the job title, where available) of each individual who was an author, addressee, or recipient of the Document;

d. the location of the document, and the identification of each Person having custody of it;

e. a brief description of the subject matter of the Document, detailed enough to permit analysis of the basis upon which it is being withheld;

f. the basis for any claim of privilege, work product or other grounds of nondisclosure; and

g. whether the privilege being asserted is being asserted with respect to the entire document or with respect to a portion thereof.

4. If any Document or Communication responsive to any Request is not currently available, include a statement to that effect and furnish whatever Documents are available. Include in Your statement when such Document was most recently in Your possession or subject to Your control and what disposition was made of it, and identify by name, job title and the last known business address, each Person currently in possession or control of such Document. If any such Document has been destroyed, identify by name, job title and last known business address, each Person who directed that the Document be destroyed, the Person(s) actually destroying the Documents, and the reasons the Document was destroyed. Also, if a log or list of such destroyed Documents was prepared, produce that log or list.

51}

5. "And" shall be construed to include "or," and "or" shall include "and," to make the Document Request inclusive rather than exclusive.

6. The past tense shall be construed to include the present tense, and the present tense shall be construed to include the past tense, to make the Document Request inclusive rather than exclusive.

7. The singular shall be construed to include the plural, and the plural shall be construed to include the plural, to make the Document Request inclusive rather than exclusive.

8. "Including" shall be construed to mean "including, but not limited to."

9. These Document Requests are continuing in nature and require amendment or supplementation if You or Your attorneys later become aware of facts or Documents that indicate that the response previously given was incorrect or incomplete. If You do not have all of the information You need to make a complete response to any Document Request, provide all Documents that You do have, state that Your information is incomplete, identify the information You would need to make a complete production of Documents and provide a supplemental production when You obtain the information necessary to do so.

10. Unless otherwise stated, the time period covered by each Document Request is from 1997 to the present.

## DOCUMENT REQUESTS

1. All Documents concerning the drafting, preparation, implementation, negotiation, renegotiation or approval of any Marketing Fee agreement entered into between Sankin and Augustus.

2. All Documents concerning the scheduling, calculation, accrual, payment or receipt of any Marketing Fee.

3. All Documents concerning the drafting, preparation, implementation, negotiation, renegotiation or approval of any Broker-Dealer Fee agreement entered into between Sankin and Augustus.

4. All Documents concerning the scheduling, calculation, accrual, payment or receipt of any Broker-Dealer Fee.

5. All Documents concerning the drafting, preparation, implementation, negotiation, renegotiation or approval of any Placement Fee agreement entered into between Sankin and Augustus.

6. All Documents concerning the scheduling, calculation, accrual, payment or receipt of any Placement Fee.

7. All Documents concerning the drafting, preparation, implementation, negotiation, renegotiation or approval of any Fund Performance Allocation Fee ("FPA") agreement entered into between Sankin and Augustus.

8. All Documents concerning the scheduling, calculation, accrual, payment or receipt of any FPA Fee.

9. All Documents concerning the drafting, preparation, negotiation, renegotiation or approval of any Selling Agreement entered into between Sankin and Perceptive.

10. All Documents concerning the drafting, preparation, negotiation, renegotiation or approval of any agreement entered into between Sankin and Augustus.

11. All Documents concerning the drafting, preparation, negotiation, renegotiation or approval of any agreement entered into between Sankin and Abeshouse.

12. All Documents concerning the drafting, preparation, negotiation, renegotiation or approval of any agreement entered into between Sankin and Perceptive.

71}

13. All Communications concerning Sankin's professional relationship with Augustus, including but not limited to the formation and termination of Sankin's employment or retention by Augustus.

14. All Documents concerning the following statement on Sankin's Form U5: "A dispute arose regarding Augustus Capital LLC's compliance policies resulting in the resignation of employee Sankin."

15. All Documents concerning any allegations in the Statement of Claim by Augustus against Sankin, including but not limited to the following:

    a. the allegation in ¶ 10 of the Statement of Claim that "Sankin was experiencing financial problems and was looking for a new employment opportunity because he had poor prospects in his field of expertise, real estate."

    b. the allegation in ¶ 10 of the Statement of Claim that Sankin "knew little or nothing about the hedge fund industry, and almost no professional investors or intermediaries involved in the hedge fund industry."

    c. the allegation in ¶ 13 of the Statement of Claim that "under hedge fund industry standards and Augustus' practice, broker-dealers, like Augustus, are entitled to ongoing, annuitized Marketing Fees even after an RR affiliates with a different broker-dealer."

    d. the allegation in ¶ 14 of the Statement of Claim that "under hedge fund industry standards and Augustus' practice, broker-dealers, like Augustus, are entitled to continue to receive Placement Fees for successfully introducing and affiliating an RR with a fund or product for as long as the RR receives compensation relating to such fund or product, regardless of whether the RR remains affiliated with the broker-dealer."

e. the allegation in ¶ 15 of the Statement of Claim that "Sankin agreed to abide by all aspects of Augustus' fee structure."

f. the allegation in ¶ 20 of the Statement of Claim that "Sankin . . . was more than willing to pay . . . full industry standard rates on the Broker-Dealer Fees and Placement Fee."

g. the allegation in ¶ 24 of the Statement of Claim that "Sankin and Edelman did not 'hit it off' smoothly at the beginning of their relationship, [and] Abeshouse had to intervene with Edelman on Sankin's behalf to prevent Edelman from terminating Sankin on numerous occasions."

h. the allegations in ¶ 25 of the Statement of Claim that "[u]nder Sankin's agreement with PLS, Sankin was to be paid for successful marketing efforts which resulted in investments (primarily procured via the Augustus database) in the PLS Fund" and that "such payments were to be made monthly through retained trading commissions generated by PLS's broker-dealer, First New York Securities."

i. the allegation in ¶ 27 of the Statement of Claim that Sankin "continues to utilize[] Augustus' database to search for and identify potential investors for PLS."

j. the allegation in ¶ 32 of the Statement of Claim that "Sankin had agreed to pay Augustus a Broker-Dealer Fee for providing the broker-dealer platform."

k. the allegation in ¶ 34 of the Statement of Claim that "it was explained to and accepted by Sankin that Augustus would charge him Broker-Dealer Fees totaling 20% of his total commissions so long as Sankin's license was held at Augustus."

l. the allegation in ¶ 35 of the Statement of Claim that "Sankin [] acknowledged that he was obligated to pay Augustus a Placement Fee according to industry standards for Augustus' role in introducing Sankin to PLS."

m. the allegation in ¶ 37 of the Statement of Claim that "it was explained to and accepted by Sankin that Augustus would charge him 33⅓% of his annual PLS compensation as a Placement Fee for successfully placing Sankin at PLS, for as long as Sankin received such compensation."

n. the allegation in ¶ 38 of the Statement of Claim that "[a]t Sankin's request, Augustus agreed to defer and accrue the monthly payment of the Broker-Dealer Fees and Placement Fees for a period of time until Sankin's financial condition had improved, as quantified when Sankin's total net (after-tax) compensation from PLS reached the $1.5 million threshold. If such PLS compensation did not reach this threshold level within 5 years of Sankin's formal affiliation with PLS, the parties agreed that Sankin was obligated to pay all accrued Broker-Dealer Fees and Placement Fees by the end of 2004."

o. the allegation in ¶ 42 of the Statement of Claim that "during the roughly 5 year period from Sankin's initial licensing with Augustus until his resignation in July, 2004, Sankin from time-to-time sought to vary the terms of the parties' agreement."

p. the allegation in ¶ 49 of the Statement of Claim that "Sankin disavowed the terms of the parties' prior agreement, specifically his obligation to pay Augustus accrued and unpaid Broker-Dealer Fees and accrued and unpaid and future Placement Fees."

q. the allegation in ¶ 50 of the Statement of Claim that "Sankin resigned from Augustus in an effort to avoid the very agreement that he had made to induce Augustus to underwrite him in entering the hedge fund industry."

16. All Communications between You and the Respondent or any other entity concerning the Statement of Claim and/or any defense to the claims and allegations contained in the Counterclaim.

101}

17. All Communications concerning prior complaints or disagreements by or on behalf of Augustus and Sankin regarding the other party.

18. All complaints, statements of claim and answers filed in all civil actions involving securities matters and securities arbitration proceedings in which Augustus has been a party, and all final decisions and awards entered in those matters.

19. All Documents sufficient to identify the officers and directors of Augustus.

20. All Documents sufficient to show the policies, guidelines, protocol or internal procedures of Augustus.

21. All Documents or Communications concerning the hiring, retention, or appointment of any consultants or other third parties to analyze, assess and investigate any fee sharing agreement between Sankin and Augustus.

22. All Documents concerning any matter which You contend constitutes a defense to any assertion or claim for relief contained in the Counterclaim.

23. All Documents You intend to use as exhibits at the hearing of this matter.

Dated:  October 11, 2005

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

By: _____

Ira Lee Sorkin
Donald A. Corbett
Bernard A. Williams

1177 Avenue of the Americas
New York, NY  10036
Telephone:  (212) 835-1400

Attorneys for Respondent
Andrew C. Sankin

111}

**EXHIBIT B**

Steven W. Gold (SG-3959)
Terence W. McCormick (TM-2713)
MINTZ & GOLD LLP
470 Park Avenue South
10th Floor North
New York, New York 10016-6819
(212) 696-4848
(212) 696-1231
gold@mintzandgold.com
mccormick@mintzandgold.com
*Attorneys for Plaintiff*
*Andrew C. Sankin*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------X

ANDREW C. SANKIN,                           :
                                            :        **07 Civ. 10491 (CLB)(MDF)**
                    Plaintiff,              :
                                            :
                                            :        **PLAINTIFF'S FIRST SET OF**
          v.                                :        **DOCUMENT REQUESTS TO**
                                            :        **DEFENDANT MARK ABESHOUSE**
MARK ABESHOUSE and                          :
RHONDA LEONARD,                             :        **ECF CASE**
                                            :
                    Defendants.             :
-------------------------------------------------X

     In accordance with the Court's scheduling order dated January 11, 2008, and

pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Andrew C. Sankin

("Sankin") hereby demands that Defendant Mark Abeshouse ("Abeshouse") produce for

examination and inspection copies of the documents designated below at the offices of

counsel for Sankin, Mintz & Gold LLP (Attn: Terence W. McCormick, Esq.), 470 Park

Avenue South, 10th Floor North, New York, N.Y. 10016-6819, on or before the 17th day

of March 2008.

## DEFINITIONS

1.    This request incorporates by reference the Definitions and Instructions appearing in Rule 34 of the Federal Rules of Civil Procedure and the Rules 26.2 and 26.3 of the Local Civil Rules of the United States District Court for the Southern District of New York.

2.    The term "Plaintiff" means Andrew C. Sankin.

3.    The term "Defendants" means Abeshouse and Defendant Rhonda Leonard.

4.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

5.    The terms "Augustus" and "Augustus Capital" mean Augustus Capital, LLC, its present and former members, managing member(s), directors, officers, employees, agents, legal representatives, consultants, predecessors, parent companies or subsidiaries.

6.    The term "Perceptive" means Perceptive Life Sciences, Fund, L.P., Perceptive Life Sciences Qualified Fund, L.P., and Perceptive Life Sciences Offshore Fund Ltd., and their present and former partners, directors, officers, employees, agents, legal representatives, consultants, predecessors, parent companies or affiliates.

7.    The term "document" includes but is not limited to the items described in Rule 34(a) of the Federal Rules of Civil Procedure: writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form.  Documents include, without limitation, electronic or computerized data compilations.

8.     The term "identify," when used with respect to documents, means to give to the extent known, the (i) type of document; (ii) general subject matter; (iii) the date of the document; and (iv) author(s), addressee(s), recipient(s).

9.     The term "person" is defined as any natural person, or any business, legal, or governmental entity or association.

10.     The term "concerning" means relating to, referring to, describing, evidencing or constituting.

11.     The terms "all" and "each" shall be construed to include both "all" and "each."

12.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively to bring within the scope of the discovery requests all responses that might otherwise be considered to be outside of its scope.

13.     The term "any" includes the word "all" and "all" includes "any".

14.     The term "complaint" refers to the complaint served and filed in the instant action, currently captioned <u>Andrew Sankin v. Mark Abeshouse and Rhonda Leonard,</u> 07 Civ. 10491 (CLB).

15.     The term "Statement of Claim" refers to the Statement of Claim filed by Augustus Capital in the arbitration held before the NASD and described in the complaint herein.

## INSTRUCTIONS

1.     Defendant is required to search for and produce all documents responsive to this request in his possession, custody, or control or in the possession, custody or control of any of his attorneys, employees, agents, consultants, or representatives, regardless of whether such responsive documents are located on the business or personal property.

3

2.    If you claim that any document responsive to this request has been lost or destroyed, or is otherwise unavailable, describe and identify each such document.

3.    The documents produced in response to this request shall be organized and designed to correspond to the categories in the requests.

4.    Any and all documents responsive to this request generated by electronic means or contained in electric equipment, computer records or other data compilations shall be produced in hard copy, and if the documents are also computerized, electronic or digital format and/or any other medium of communications or storage, shall be downloaded to diskette or CD-Rom without further processing by you, containing all significant material contained in the electronic records including, without limitation, the creation date for the file and the date it was last modified. All electronic records produced shall be certified by use of certification software.

5.    If, in answering a request, you claim any ambiguity in interpreting either the request or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond, but shall be set forth as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the request.

6.    If a claim of privilege is asserted with respect to any request contained in this demand, or if you refuse to respond on any other ground, specify the exact basis for your claim with sufficiency to permit the court to determine the legal sufficiency of your objection or position.

7.    If any portion of a document is responsive is responsive to the request, the entire document shall be produced, including any and all attachments thereto.

8.    This request is a continuing one and requires further and supplemental production whenever you (including, without limitation, your attorneys, accountants, bookkeepers, advisors,

4

agents, other service providers, and any others acting on your behalf) locates further responsive documents between the time of the initial production and the time of the trial of this action.

9.    Unless otherwise indicated, the relevant time period for these requests is February 1999 through the present.

10.    Please note that you are not required to produce any documents in response to the following requests if Augustus Capital has already produced or received production of those documents in the arbitration.

## DOCUMENT REQUESTS

1.    All Documents concerning the drafting, preparation, implementation, negotiation, renegotiation or approval of any Marketing Fee agreement entered into between Sankin and Augustus Capital.

2.    All Documents concerning the scheduling, calculation, accrual, payment or receipt of any Marketing Fee.

3.    All Documents concerning the drafting, preparation, implementation, negotiation, renegotiation or approval of any Broker-Dealer Fee agreement entered into between Sankin and Augustus Capital.

4.    All Documents concerning the scheduling, calculation, accrual, payment or receipt of any Broker-Dealer Fee.

5.    All Documents concerning the drafting, preparation, implementation, negotiation, renegotiation or approval of any Placement Fee agreement entered into between Sankin and Augustus Capital.

6.    All Documents concerning the scheduling, calculation, accrual, payment or receipt of

any Placement Fee.

7.     All Documents concerning the drafting, preparation, implementation, negotiation, renegotiation or approval of any Fund Performance Allocation Fee ("FPA") agreement entered into between Sankin and Augustus Capital.

8.     All Documents concerning the scheduling, calculation, accrual, payment or receipt of any FPA Fee.

9.     All Documents concerning the drafting, preparation, negotiation, renegotiation or approval of any Selling Agreement entered into between Sankin and Perceptive.

10.     All Documents concerning the drafting, preparation, negotiation, renegotiation or approval of any agreement entered into between Sankin and Augustus Capital.

11.     All Documents concerning the drafting, preparation, negotiation, renegotiation or approval of any agreement entered into between Sankin and Abeshouse.

12.     All Documents concerning the drafting, preparation, negotiation, renegotiation or approval of any agreement entered into between Sankin and Perceptive.

13.     All Communications concerning Sankin's professional relationship with Augustus Capital, including but not limited to the formation and termination of Sankin's employment or retention by Augustus Capital.

14.     All Documents concerning the following statement on Sankin's Form U-5: "A dispute arose regarding Augustus Capital LLC's compliance policies resulting in the resignation of employee Sankin."

15.     All Documents concerning any allegations in the Statement of Claim by Augustus Capital against Sankin, including but not limited to the following:

      a.     the allegation in ¶15 of the Statement of Claim that "Sankin agreed to abide by all aspects of Augustus' fee structure."

      b.     the allegation in ¶20 of the Statement of Claim that "Sankin . . . was more than willing to pay . . . full industry standard rates on the Broker-Dealer Fees and Placement Fee."

      c.     the allegation in ¶32 of the Statement of Claim that "Sankin had agreed to pay Augustus a Broker-Dealer Fee for providing the broker-dealer platform."

      d.     the allegation in ¶34 of the Statement of Claim that "it was explained to and accepted by Sankin that Augustus would charge him Broker-Dealer Fees totaling 20% of his total commissions so long as Sankin's license was held at Augustus."

      e.     the allegation in ¶35 of the Statement of Claim that "Sankin [] acknowledged that he was obligated to pay Augustus a Placement Fee according to industry standards for Augustus' role in introducing Sankin to PLS."

      f.     the allegation in ¶37 of the Statement of Claim that "it was explained to and accepted by Sankin that Augustus would charge him 33 ⅓ % of his annual PLS compensation as a Placement Fee for successfully placing Sankin at PLS, for as long as Sankin received such compensation."

      g.     the allegation in ¶38 of the Statement of Claim that "[a]t Sankin's request, Augustus agreed to defer and accrue the monthly payment of the Broker-Dealer Fees and Placement Fees for a period of time until Sankin's financial

7

condition had improved, as quantified when Sankin's total net (after-tax) compensation from PLS reached the $1.5 million threshold. If such PLS compensation did not reach this threshold level within 5 years of Sankin's formal affiliation with PLS, the parties agreed that Sankin was obligated to pay all accrued Broker-Dealer Fees and Placement Fees by the end of 2004."

     h.     the allegation in ¶42 of the Statement of Claim that "during the roughly 5 year period from Sankin's initial licensing with Augustus until his resignation in July, 2004, Sankin from time-to-time sought to vary the terms of the parties' agreement."

     i.     the allegation in ¶49 of the Statement of Claim that "Sankin disavowed the terms of the parties' prior agreement, specifically his obligation to pay Augustus accrued and unpaid Broker-Dealer Fees and accrued and unpaid and future Placement Fees."

     j.     the allegation in ¶50 of the Statement of Claim that "Sankin resigned from Augustus in an effort to avoid the very agreement that he had made to induce Augustus to underwrite him in entering the hedge fund industry."

16.     All documents concerning communications between you and Sankin or any other person or entity concerning the complaint and/or any defense to the claims and allegations contained in complaint.

17.     All documents concerning communications between Defendants or Augustus Capital and Jonathan Edelman in which Sankin was mentioned.

18.     All documents concerning complaints or disagreements by or on the part of Augustus Capital and Sankin regarding the other party.

19.    All documents concerning communications regarding and/or your awareness of Sankin's cancer condition, including without limitation his treatment and any subsequent complications.

20.    All documents concerning communications regarding and/or evidencing your awareness of the termination of Sankin's relationship with Perceptive.

21.    The organizational documents of Augustus Capital, including, without limitation, the minute book, certificate of formation, operating agreement, by-laws, and the minutes of any meeting of the members or the managers.

22.    All documents concerning that certain opinion letter of Defendant Rhonda Leonard attached to these requests as Exhibit 1, including, without limitation, the documents relied upon by Defendant Leonard in preparing the letter.

23.    Documents concerning insurance policies purchased by or on behalf of Augustus Capital, including without limitation any riders or amendments thereto, providing coverage for claims against Augustus Capital and/or its registered representatives and supervisory personnel by investors.

24.    All Documents sufficient to show the policies and internal procedures of Augustus Capital during the period when Sankin was a registered representative of Augustus Capital.

25.    All Documents concerning any matter which you contend constitutes a defense to any assertion or claim for relief contained in the complaint.

26.     All Documents that you intend to use as exhibits at the trial of this matter.

Dated:   New York, New York
        February 8, 2008

                        **MINTZ & GOLD LLP**

                        _____

                        Terence W. McCormick (TM-2713)
                        470 Park Avenue South
                        10th Floor North
                        New York, NY 10016-6819
                        (212) 696-4848
                        mccormick@mintzandgold.com
                        _Attorneys for Plaintiff Andrew Sankin_

To:       Charles Addison Stewart, III, Esq.
          Stewart Occhipinti, LLP
          1350 Broadway, Suite 2200
          New York, NY 10018
          _Counsel for Defendant_
          _Mark Abeshouse_

          Richard E. Signorelli, Esq.
          Law Office of Richard E. Signorelli
          799 Broadway, Suite 539
          New York, NY 10003
          _Counsel for Defendant_
          _Rhonda Leonard_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ANDREW C. SANKIN,                                )
                                                 )
                    Plaintiff,                   )        7:07-cv-10491-CLB
                                                 )
                                                 )
        -against-                                )
                                                 )
MARK ABESHOUSE and RHONDA                        )        **CERTIFICATE OF SERVICE**
LEONARD,                                         )
                                                 )
                    Defendants.                  )
                                                 )
-----------------------------------------------------X

        CHARLES A. STEWART, III, an attorney admitted to practice in the United
States District Court for the Southern District of New York, certifies, pursuant to 28
U.S.C. § 1746, under penalty of perjury, that on February 25, 2008, the attached Reply
Declaration, with exhibits, was served upon all counsel in this action by electronically
filing the same with the Court pursuant to the rules of the United States District Court for
the Southern District of New York:

                    Richard W. Signorelli, Esq.
                    Law Office of Richard E. Signorelli
                    799 Broadway, Suite 539
                    New York, New York 10003
                    rsignorelli@nycLITIGATOR.com

                    Terence William McCormick, Esq.
                    Mintz & Gold LLP
                    470 Park Avenue South, 10th Floor North
                    New York, New York  10016
                    mccormick@mintzandgold.com


Dated: New York, New York
        February 25, 2008


                            _____/s/_____
                                Charles A. Stewart, III (CS-7099)